Argued and submitted February 10, reversed and remanded April 6, 1983

In the Matter of the Compensation of
Phillip J. Barrett, Claimant.

BARRETT,
*Petitioner on Review,*
*v.*
COAST RANGE PLYWOOD,
*Respondent on Review.*

(WCB 81-03112, CA A24457, SC 29076)

661 P2d 926

Rolf Olson, Salem, argued the cause for petitioner on review. With him on the brief was Olson, Hittle & Gardner, Salem.

Marshall Cheney, Portland, argued the cause for respondent on review. With him on the brief was Cheney & Kelley, Portland.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

ROBERTS, J.

## ROBERTS, J.

We accepted review in this workers' compensation case to consider language in the Workers' Compensation Board's opinion which states:

"The Referee found that there was no evidence to show that the functional component is not injury related. That may be true but irrelevant as the burden is on claimant to prove causal relationship. Claimant never did have a psychological evaluation even though numerous physicians diagnosed functional overlay. Therefore this record is devoid of any proof that claimant's psychological component is injury-related or permanent in nature. We will not consider that condition in rating claimant's compensable disability."

This statement by the Board implies that no matter how much evidence there may be of psychological functional overlay, claimant has not met his burden of proving a causal relationship between the functional overlay and the injury unless the evidence includes a psychological evaluation. Based on this conclusion the Board modified the referee's order awarding permanent total disability to an award of forty percent unscheduled low back disability. The Court of Appeals affirmed without opinion.

Claimant, a 37 year old male, was injured when his low back was jarred. His condition was diagnosed as a severe strain of the lumbosacral spine. After being treated by three physicians for a period of approximately seven months, claimant attempted to return to work but was unable to endure more than a few hours' activity because of back pain. He has not worked since. Various examinations have disclosed functional overlay in varying degrees.

At argument counsel for the insurer described "functional overlay" as an "over-reaction or over-response to pain" and as a "psychological or psychiatric condition which develops subsequent to compensable injury in some occasions and in some cases exists prior to a compensable injury. It manifests itself by perhaps phantom pain, perhaps an over-response to pain." Stedman's Medical Dictionary (4th ed 1976) explains "functional" as "* * * nonorganic; *i.e.,* a functional ailment is one that is not caused by a structural defect." "Overlay" is defined as "an addition to

an already existing condition." "Functional overlay" then is an ailment in addition to an already existing condition which is not caused by a structural defect.[1] Applying these definitions to this case functional overlay may be explained as the psychological component of the injury claimant sustained to his back and it manifests itself in the pain and discomfort he continues to experience after the structural causes of his injury are no longer apparent.[2] Claimant alleges that it is the functional overlay which causes his disability. Such a disability has been compensated in Oregon. *See Elliott v. Precision Castparts Corp.,* 30 Or App 399, 401, 567 P2d 566, *rev den* 280 Or 171 (1977), and *Guerra v. Transport Indemnity,* 30 Or App 415, 417, 567 P2d 573, *rev den* 279 Or 301 (1977).

■ Evidence of functional overlay which appears in the record is as follows: Orthopedic Consultants first suggested functional overlay in January, 1980, when they diagnosed "1) lumbar strain with leg symptoms, by history; 2) functional overlay, conversion type," and also stated, "[i]t is difficult to estimate the impairment in a patient with so much functional overlay that interferes with the examination. Our best estimate is that the impairment in the lower back due to this injury is minimal." In February, 1980, Dr. Berkeley, a neurosurgeon, remarked, "I would not call his disability caused by these symptoms even in the presence of functional overlay as minimal." In January, 1981, Dr. Roof, a neurosurgeon, was of the opinion that there was a marked functional overlay; in March, 1981, Dr. Winkler, claimant's treating physician said, "I feel that this individual is credible in his complaints and symptoms because he was a fulltime worker working hard and successful until this injury occurred. It has been stated by another physician that he has a lot of functional overlay

---

[1] We take judicial notice of the dictionary definition. OEC 201(b)(2), *Bend Millwork v. Dept. of Revenue,* 285 Or 577, 592 P2d 986 (1979).

[2] We have found cases in which physicians have testified about functional overlay. In *Balestri v. Highway & City Transpor. Inc.,* 57 Ill App 3d 669, 672, 373 NE2d 689 (1978), *aff'd* 76 Ill2d 451, 394 NE2d 391, *cert denied* 444 US 1018, 100 S Ct 671, 62 LEd 2d 648 (1980), an orthopedic surgeon testified that his diagnosis of functional overlay meant that he could find no objective medical justification for plaintiff's pain. In *McKenney v. School Bd. of Palm Beach County,* 408 So2d 655, 658 (Fla App 82) a physician testified that functional overlay means claimant's symptoms were of psychological origin.

but I believe if he does have functional overlay, this is due to pain and suffering that he accurs *[sic]* more than exhibiting it for financial gain." In April, 1981, Dr. Berkeley did not specifically use the words "functional overlay" but did say, "In his present condition, this patient's disability seems to be quite severe in spite of the negative neurological findings."

The issue in this case is whether the presence of functional overlay is a subject of such a scientific or technical nature that only testimony of psychological experts may suffice to establish the causal relationship between claimant's injury and his disability. We conclude it was an error of law for the Board to disregard all evidence of functional overlay because a particular kind of evidence, expert psychological testimony, was not presented.

Oregon cases have considered the requirement for expert medical testimony in establishing workers' disability. Both this court and the Court of Appeals have recognized the compensability of an injury even without expert medical evidence establishing the causal relationship between the incident and the injury. *See Uris v. Compensation Department,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967); *Volk v. Birdseye Division,* 16 Or App 349, 518 P2d 672 (1974). More frequently, however, expert medical testimony is indispensable. Professor Larson points out that "[t]he rule relaxing the necessity for medical testimony * * * is not justified when the medical question is no longer an uncomplicated one and carries the fact-finders into realms which are properly within the province of medical experts." 3 Larson, Workmen's Compensation Law § 79.54.

We have required expert medical testimony for proof of both the causal connection between accident and injury and proof of the degree of disability. *Marston v. Compensation Department,* 252 Or 640, 452 P2d 311 (1969); *Larson v. State Industrial Accident Commission,* 209 Or 389, 307 P2d 314 (1957); *Orr v. Industrial Accident Commission,* 217 Or 249, 342 P2d 136 (1959). These cases indicate that expert medical testimony is generally required to prove the causal connection between accident and injury and between

injury and disability. The issue presented by this case is a question of what kind of expert medical testimony is necessary to prove the causal relationship between an injury and the psychological components of the injury.

The term "expert witness" means:

"a witness who is qualified, by reason of special knowledge or skill gained from experience, training, or education in a particular field, to express an opinion on a matter within that field that will be of assistance to the trier of fact in discharging the trier's function. *Galego v. Knudson,* 281 Or 43, 47, 573 P2d 313 (1978)." *W.R. Chamberlin & Co. v. Northwestern Agencies, Inc.,* 289 Or 201, 203, 611 P2d 652 (1980).[3]

*State Highway Com. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959) observes that an expert is one who has acquired certain habits of judgment based on experience or special observation which enable an expert to draw from the facts inferences uniquely beneficial to the jury.

Physicians may be expert witnesses but to what may they testify? "No expert is competent to express an opinion on every subject." *Myers v. Cessna Aircraft,* 275 Or 501, 521, 553 P2d 355 (1976). Wigmore states:

"The capacity is in every case a relative one, *i.e.,* relative to the topic about which the person is asked to make his statement. The object is to be sure that the question to the witness will be answered by a person who is fitted to answer it. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand * * * A person may be sufficiently skilled upon one question, and totally unskilled upon the next." 2 Wigmore on Evidence 634, § 555 (3d ed 1940).

*Accord, Meyer v. Harvey Aluminum,* 263 Or 487, 501 P2d 795 (1972).

---

[3] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

In spite of that admonition it has been said that a witness who is qualified to give expert testimony in a general field need not demonstrate expertise in a specialized aspect of that field. *See* McCormick, Handbook of the Law of Evidence 30 (2d ed 1972); *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 305, 498 P2d 766 (1972); *Unified Sewerage Agency v. Duyck,* 33 Or App 375, 380, 576 P2d 816 (1978). We held in *Mayor v. Dowsett,* 240 Or 196, 219, 400 P2d 234 (1965), that a physician who was not a neurological expert was competent to testify as to whether paralysis and its symptoms following spinal anesthesia may ensue after an anesthetic has worn off. This is consistent with the great weight of authority holding that a physician or surgeon is not incompetent to testify as an expert merely because he or she is not a specialist in the particular branch of the profession involved in the case. Most cases have held that a physician's specialty usually affects only the weight but not the competence of the expert testimony. *See generally* Annot., 54 ALR 860 (1928). For example, in *Seawell v. Brame,* 258 NC 666, 129 SE2d 283 (1963) a doctor engaged in the general practice of medicine testified that he had received psychiatric training while in medical school but did not hold himself out to be a psychiatrist. The court would have upheld admission of his testimony concerning the development of neurosis, leading to an ulcer and an asthmatic condition as a result of an injury, if his opinion had been based upon either personal knowledge or facts in evidence. Similarly, *Parker v. Gunther,* 122 Vt 68, 164 A2d 152 (1960) held that there was no error in allowing a general practitioner to testify as to brain damage suffered by plaintiff as the result of an accident, even though the physician was admittedly not a specialist in injuries or diseases of the brain.[4]

An Arizona court addressed a similar challenge to the competence of a medical expert in a workers' compensation setting. In *Haynes v. Industrial Commission,* 19 Ariz App 559, 509 P2d 631 (1973), the claimant, a nurse's aide,

---

[4] We note there are some exceptions. *See, e.g., Moore v. Belt,* 34 Cal2d 525, 212 P2d 509 (1950) (testimony of physician in field of urology excluded where physician had never practiced urology); *Hunt v. Bradshaw,* 251 F2d 103 (4th Cir 1958) (exclusion of testimony of physician with experience as radiologist but none in chest surgery as to proper method for performing chest operation).

experienced sharp pain in her neck and right shoulder while shaking down a thermometer. Some months later she was released to work but was unable to work steadily and eventually terminated her employment. Claimant sought to prove a causal connection between the pain of her on-the-job injury and an aggravation of a pre-existing condition, angina pectoris (chest pain). She argued that the aggravation, which would not otherwise have occurred but for the pain, resulted in her disability. Dr. Robinson, a cardiologist, while not drawing a conclusion regarding the relationship between the neck pain and the aggravated chest pains, testified more favorably for compensation than did Dr. DePaoli, an orthopedic surgeon, who specifically rejected any demonstrated relationship. Claimant urged that Dr. DePaoli was not qualified to testify to the relationship between the industrial injury and the cardiac disability because he was an orthopedist, and that Dr. Robinson's testimony was, therefore, the only competent evidence as to that relationship. The court said, "We disagree. Clearly the field of specialization of a competent medical witness affects the weight to be accorded his evidence, not its admissibility, and the Commission is the judge of the weight of the evidence." 509 P2d at 633.

*Guillory v. Travelers Insurance Company,* 326 So2d 914 (La Ct App), *writ den, no error of law,* 331 So2d 494 (La 1976), addresses precisely the issue raised in this case. In *Guillory* claimant sought to prove total and permanent disability for a job related injury to his right hand. Medical experts testified that they found no physical cause of claimant's pain but two out of the three testified that claimant suffered from overlaying conversion hysteria, described by one doctor as a condition which arises "when the mind thinks you're hurt and you're really not hurt and it's a mental thing." 326 So2d at 917. The insurer argued that a claim for conversion hysteria may not be proven by the testimony of physicians because the matter was outside their field of expertise. The court rejected the argument. It indicated that the diagnosis of conversion hysteria is within the competency of medical doctors even though treatment of the ailment may not be.

We are persuaded by the authorities cited herein and believe that *Guillory* states the correct rule to be

applied in this case. Accordingly, we hold that because the diagnosis of functional overlay is within the competency of medical doctors, they may express expert opinions about the disability. The fact that they are not psychotherapists may go to the weight to be accorded their testimony but that fact cannot serve as the reason to disregard the testimony entirely.

In this case the Board refused to consider the evidence of functional overlay presented by the medical doctors who were not psychologists or psychiatrists. This was error.

The decision of the Court of Appeals is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings consistent herewith.