Submitted November 25, 2014, affirmed August 26, 2015, petition for review denied February 4, 2016 (358 Or 550)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH FRANK ALTHOF,
*Defendant-Appellant.*

Curry County Circuit Court
12CR0079; A153292

359 P3d 399

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

LAGESEN, P. J.

## LAGESEN, P. J.

Defendant appeals from convictions for sexual abuse in the first degree (five counts) and unlawful penetration in the second degree (one count). He assigns error to (1) the trial court's admission of evidence of uncharged misconduct; (2) the trial court's determination that the investigating detective was qualified under OEC 702 to provide expert testimony regarding the different reasons a victim of sexual or domestic abuse might delay reporting the abuse to the police; and (3) the trial court's refusal to instruct the jury that it was required to reach unanimous verdicts on the charges against defendant, and its subsequent acceptance of nonunanimous verdicts. We affirm.

A detailed discussion of the facts underlying the prosecution would not benefit the bench, bar, or public. The charges against defendant were based on conduct involving his daughter S in 2004 and 2005. S did not disclose the abuse to authorities until 2012, after she was living separately from her family. She did so after her younger sister, A, told her that A had overheard defendant telling their mother that he was interested in having A masturbate while defendant had sex with their mother. S reported the abuse at that point in time because she "didn't want [A] to go through the same thing." S's disclosures led to an investigation of defendant and the charges against him. At trial, the trial court admitted evidence of the conversation that A overheard and reported to S after concluding that it was relevant for two different purposes: to explain why S reported when she did, years after the abuse had occurred, and as evidence of defendant's intent with respect to his conduct involving S. The court also permitted the investigating detective to testify as an expert regarding the different reasons that victims of sexual or domestic abuse delay in reporting the abuse, over defendant's objection that the detective was not qualified under OEC 702 to provide that testimony.[1]

---

[1] Defense counsel, through his cross-examination of S, suggested that S's delay in reporting the abuse, when S had had many opportunities over the years to report it, was reason to disbelieve S. The trial court admitted the detective's testimony regarding the reasons that victims delay in reporting after S had testified, apparently offered to counteract the suggestion that delay equates to fabrication. Defendant does not dispute the relevance of the testimony, and did not do so below.

We reject defendant's first assignment of error because it is not preserved, and does not qualify for plain-error review. In it, defendant argues that the trial court erred in admitting the evidence of the conversation that A recounted to S, leading to S's reporting of the abuse against her, without adhering to the procedure established by the Supreme Court in *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), and *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012). But defendant did not argue to the trial court that the *Leistiko/Pitt* procedures applied under the circumstances present in the case and, thus, did not preserve his claim of error. ORAP 5.45(1). Further, the trial court's error, if any, is not "obvious," so as to permit correction absent preservation. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). *Leistiko* and *Pitt* addressed the procedures applicable to the admission of uncharged misconduct evidence for the purpose of demonstrating intent under a doctrine-of-chances theory of relevance. It is not obvious whether and how those procedures apply where, as here, the uncharged misconduct evidence also is relevant and admissible for a different purpose that does not turn on a doctrine-of-chances theory. *See State v. Horner*, 272 Or App 355, 367-68, 356 P3d 111 (2015) (where evidence might be relevant, and not just conditionally relevant under a doctrine-of-chances theory of intent, it is not obvious that the trial court errs by not employing the *Leistiko* framework).

Regarding defendant's second assignment of error, we review a trial court's determination of whether a witness is qualified under OEC 702 to provide expert testimony about a particular topic for legal error, without deference to the trial court. *State v. Hazlett*, 269 Or App 483, 494, 345 P3d 482 (2015). Under OEC 702,

> "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training or education* may testify thereto in the form of an opinion or otherwise."

(Emphasis added.) Accordingly, OEC 702 requires an assessment of the particular qualifications of the witness. *State v. Rogers*, 330 Or 282, 316, 4 P3d 1261 (2000). A witness is not

assumed to be disqualified merely because the person lacks a particular educational or professional degree. *Id.* To be an expert, a person simply must have the "knowledge, skill, experience, training or education" to provide testimony "in the form of an opinion or otherwise" regarding the "particular topic" on which the person claims expertise. OEC 702; *Rogers,* 330 Or at 315. "'The capacity [to testify] in every case is a relative one, *i.e.,* relative to the topic about which the person is asked to make his statement.'" *Meyer v. Harvey Aluminum,* 263 Or 487, 489, 501 P2d 795 (1972) (quoting John Henry Wigmore, 2 *Evidence* § 555, 634 (3d ed 1940)) (emphasis omitted).

Here, the investigating detective's training and experience gave him the capacity to testify on the particular topic on which he provided expert testimony: the different reasons why victims of either sexual abuse or domestic abuse might not report such abuse immediately. We note that the detective's expert testimony was narrow in scope. He did not describe delayed reporting as if it were a scientific or psychological phenomenon, as was the case in *State v. Marrington,* 335 Or 555, 73 P3d 911 (2003).[2] Instead, he described various, concrete reasons why victims of physical or sexual abuse might not report abuse to authorities immediately: (1) the victim does not have faith in the law enforcement system because of past experience with it or because the victim does not trust the particular law enforcement officer with whom the victim is working; (2) the victim may have been bribed or threatened by the abuser; (3) the victim may fear that he or she will not be believed by law enforcement; (4) the victim is too young to be aware of or understand the abuse; (5) there is not, in fact, anything for the victim to disclose; and (6) the victim may have financial ties to the abuser that the victim does not want to jeopardize by reporting.

---

[2] In *Marrington,* the Supreme Court held that a psychologist's testimony "that delayed reporting is a predominant feature of disclosure in otherwise verified cases of child sexual abuse" was scientific evidence that had to satisfy the standards for admissibility established in *State v. Brown,* 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key,* 321 Or 285, 899 P2d 663 (1995). *Marrington,* 335 Or at 557, 560, 564. As noted, the particular testimony given by the investigating detective was not scientific in nature, and neither party has suggested that the *Brown* and *O'Key* standards govern the admission of that testimony, or have any role in the analysis of the issue before us.

The investigating detective's background demonstrates that the detective was qualified to provide that testimony by virtue of his training and experience. The detective had nine years of experience in law enforcement, and had been a detective for a little over a year. In the time since he had been promoted to detective, he had investigated 10 sexual abuse cases, half of which had involved delayed reporting. In the same time period, he assisted other more senior detectives in multiple investigations that were not his own to learn more about such matters. In the years before he became a detective, he investigated domestic violence cases that involved delays in the disclosure of abuse to authorities. That experience gave him the opportunity to observe the different reasons why someone might delay reporting.

The detective also had specific training in child abuse investigations that addressed delays in reporting, including two recent trainings on child abuse that addressed delayed reporting, a training several years earlier on interviewing victims of violence that addressed delayed disclosure, trainings on domestic abuse and child abuse, as well as training at the police academy on child abuse. Given that background—which included training about, and years of direct experience with, people who did not report abuse immediately, the trial court was correct to conclude that the detective had the training and experience to provide an opinion as to the different reasons why a victim of abuse might not report it to authorities immediately.

Defendant's final assignments of error, which challenge the trial court's failure to instruct the jury that it was required to render unanimous verdicts, and the trial court's acceptance of nonunanimous verdicts, are foreclosed by *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972).

Affirmed.