POWERS, J.
*320 Plaintiff appeals from a judgment entered against defendant for noneconomic damages for injuries that plaintiff had suffered as a result of a car accident. Defendant admitted liability and that plaintiff had been injured in the accident, but denied the extent of the injuries, and the parties proceeded to trial solely on the issue of noneconomic damages. Plaintiff assigns as error the trial court's disqualification of plaintiff's expert witness, Dr. Jonathan McClaren, as an expert *732 in (1) biomechanical engineering[1] and (2) accident reconstruction. Plaintiff argues that McClaren qualified as an expert in both fields "by knowledge, skill, experience, training or education." OEC 702.[2] We agree with plaintiff that the trial court erred in disqualifying McClaren as an expert in biomechanical engineering and in accident reconstruction, and further conclude that that error was not harmless. Accordingly, we reverse and remand.[3]
Plaintiff was injured in a car accident in which defendant's pickup truck collided with plaintiff's car. In a negligence lawsuit, plaintiff alleged, among other things, that he suffered personal injuries, including severe neck and back strains, headaches, contusions, and abrasions. For his part, defendant admitted negligence and admitted that plaintiff sustained injuries, but denied the extent of those injuries. Having separately litigated economic damages, the case proceeded to a jury trial solely on the issue of plaintiff's noneconomic damages.
Before trial began, defendant requested an OEC 104 hearing-specifically, a hearing to determine the preliminary question of McClaren's qualifications to testify *321 as an expert witness-because he questioned McClaren's qualifications as an expert in biomechanical engineering and accident reconstruction. At the hearing, McClaren testified that he had been a licensed chiropractic physician for approximately six years, primarily focusing on treating patients involved in car accidents. He further testified that he held a certification in spinal biomechanical engineering, along with an advanced certification in whiplash biomechanics and injury traumatology. Whiplash biomechanics, McClaren explained, is "the application of the science and physics of mechanics to the biology of the human body" and involves how different "crash vectors" "impart forces into the human body" and how injuries may occur. McClaren also added that his certification in spinal biomechanical engineering is similar to the whiplash biomechanics credential but focuses on the mechanics of the spine other than those related to whiplash.
According to his testimony, McClaren's certifications required successful completion of several courses, some of which were online through medical schools, some of which were completed in person. On cross-examination, McClaren testified that he had been qualified to testify as an expert in biomechanical engineering once before in Washington County, but that he had not published anything or taught any courses on the subject.
Plaintiff argued that, although McClaren did not have extensive experience testifying, he had sufficient qualifications under OEC 702 to testify as a biomechanical expert. Plaintiff reasoned that, because the issue in this case is the extent of plaintiff's injuries and the extent of pain and suffering as a result of the car accident, McClaren's testimony would be helpful to "explain to the jury how this accident happened and how it impacted [plaintiff's] body."
In urging the trial court to conclude that McClaren was not qualified under OEC 702 to testify as a biomechanical engineering expert, defendant argued that McClaren's "testimony isn't going to be helpful to the jury. The jury can look at the pictures and tell this accident is capable of causing an injury to the plaintiff. We don't need a biomechanical explanation of that."
*322 The trial court agreed with defendant's argument:
"You may be a fabulous chiropractor, may not be, I don't know. But it doesn't appear to me that he is an expert in biomechanics, and he will be prohibited from testifying as such."
*733 The parties then turned to whether McClaren qualified as an expert in accident reconstruction. McClaren explained that accident reconstruction involves "using physical evidence and testimony of people involved to reconstruct what occurred during an accident," and that it allows him "to extrapolate from that what [his patient's] injuries might be so [he] can order the appropriate diagnostic imaging, appropriate exams, * * * and better treat [his] patients." McClaren testified that he held an accident reconstruction certification from the Accreditation Commission for Traffic Accident Reconstructionists (ACTAR) and that he took a continuing education course at the Washington Association of Technical Accident Investigators about "flashing yellow turn arrows, the mechanism of function, how to reconstruct accidents based on who was getting a yellow turn arrow, who was getting a green turn arrow, et cetera." He explained that his ACTAR certification required 160 hours of training in crash investigation and 80 hours of crash reconstruction training, as well as several other weekend courses before passing an eight-hour examination on the subject. McClaren also explained that you have to first apply to take the exam, which involves a "look at your experience and/or training to determine if you're eligible to sit." McClaren testified that he has been employed as an accident reconstructionist in three cases since receiving his certification-once in the litigation context, twice outside of litigation.
Plaintiff argued that McClaren qualified as an expert in accident reconstruction because, under OEC 702, McClaren need only have qualifications in any of the following areas: knowledge, skill, experience, training, or education. Defendant countered that McClaren should be excluded as an expert witness in accident reconstruction because, although he was accredited, he did not have the requisite professional experience within the field. The trial court agreed with defendant and excluded McClaren as an expert in accident reconstruction.
*323 Plaintiff now appeals, arguing that the trial court erred in disqualifying McClaren as an expert in (1) biomechanical engineering and (2) accident reconstruction. We review for legal error whether a trial court properly applied OEC 702 in deciding whether an expert is qualified to testify. State v. Dunning , 245 Or. App. 582, 588-90, 263 P.3d 372 (2011).
The admissibility of expert evidence generally involves the application of three rules in the Oregon Evidence Code: OEC 401, OEC 702, and OEC 403. Thoens v. Safeco Ins. Co. of Oregon , 272 Or. App. 512, 526, 356 P.3d 91 (2015). First, the expert evidence must be relevant under OEC 401, which is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Second, the expert evidence must pass muster under OEC 702, which serves a "gatekeeping function" for expert testimony and provides:
"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."
Thoens , 272 Or. App. at 526, 356 P.3d 91. Third, even if the evidence is relevant and passes muster under OEC 702, it may still nevertheless be excluded under OEC 403, which provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Here, defendant did not raise an objection to McClaren's testimony under OEC 401 or OEC 403 at trial, nor does he make an argument under OEC 401 or OEC 403 in his brief on appeal. Plaintiff's only contention on appeal is that McClaren's credentials in the general fields of biomechanical engineering and accident reconstruction were sufficient to qualify him as an expert. Thus, our sole focus on appeal is but one aspect of OEC 702 -McClaren's general qualifications to testify as an expert in those two fields.
*324 An expert is one that has acquired certain habits of judgment based on *734 experience or special observation that enables him or her to draw from the facts inferences that are uniquely beneficial to the jury. State Highway Com. v. Arnold et al, 218 Or. 43, 64, 341 P.2d 1089 (1959). "No expert is competent to express an opinion on every subject." Myers v. Cessna Aircraft , 275 Or. 501, 521, 553 P.2d 355 (1976). However, "a witness who is qualified to give expert testimony in a general field need not demonstrate expertise in a specialized aspect of that field." Barrett v. Coast Range Plywood , 294 Or. 641, 647, 661 P.2d 926 (1983). Nonetheless, the Supreme Court has illustrated a "preference for examining the knowledge of each expert witness regarding the subject of his or her testimony, rather than adopting a rigid rule tied to a particular degree or specialty." Trees v. Ordonez , 354 Or. 197, 211, 311 P.3d 848 (2013). "Proper application of OEC 702 requires assessment of the particular qualifications of each witness. We do not assume a disqualification from the lack of a particular educational or professional degree." State v. Rogers , 330 Or. 282, 316, 4 P.3d 1261 (2000).
As explained below, we conclude that the trial court erred in concluding that McClaren was not qualified as an expert witness in the fields of biomechanical engineering and accident reconstruction. Plaintiff adduced sufficient evidence at the OEC 104 hearing to establish McClaren's expertise in the respective fields to qualify him as an expert under OEC 702.
Defendant argues, relying on cases like Myers and Dunning , that McClaren's qualifications fall short. We disagree. As an initial matter, as we have previously observed, an expert may be qualified under OEC 702 by "knowledge, skill, experience, training, or education." State v. Woodbury , 289 Or. App. 109, 115, 408 P.3d 267 (2017) (emphasis in original). Moreover, OEC 702 sets forth a liberal standard for qualifying expert witnesses. See Laird C. Kirkpatrick, Oregon Evidence § 702.03, Art VII-7 (6th ed. 2017) (noting that OEC 702"liberalizes Oregon Law regarding testimony by expert witnesses" and explaining that "expert testimony may be allowed not only on matters beyond the knowledge of the jury, but also where the knowledge of an expert would help the jury better understand matters about which they *325 already have knowledge"). Here, McClaren's qualifications, described above, more than meet that standard. Myers and Dunning do not compel a different conclusion.
In Myers , the defendant argued that his expert was qualified as an accident reconstruction analyst to offer an opinion on the probable cause of a plane crash. 275 Or. at 519, 553 P.2d 355. The trial court disagreed and struck the expert's testimony in that regard. Id. The Supreme Court affirmed, concluding that the expert did not have adequate experience or training in investigating aircraft accidents, except insofar as mechanical or engineering problems might be at issue. Id. at 520-21, 553 P.2d 355. As the court explained, although there was evidence that the expert had previously testified as an aircraft accident expert, the expert "had no formal training as an accident investigator, [and] had never attended a seminar on that subject." Id. at 520, 553 P.2d 355.
Myers is unhelpful because it is distinguishable on its facts.[4] McClaren's qualifications do not share the same faults as the expert in Myers . Unlike the expert in Myers , McClaren received formal training in both biomechanical engineering and accident reconstruction, and he completed several *735 courses in both subjects. As explained above, not only did McClaren receive formal training and education in both fields, but he had professional experience, which is more than sufficient to qualify him as an expert under the liberal standard set forth by OEC 702.
Dunning is also distinguishable. In Dunning , we held that it was legal error for the trial court to allow a police officer to testify as an expert on memory recall after traumatic *326 events. 245 Or. App. at 591, 263 P.3d 372. The following facts were offered in support of the officer's qualifications to testify as an expert under OEC 702 : (1) the officer was a department firearms instructor, and he taught students about what they could expect to experience psychologically after a use of force situation; (2) he read publications on the topic; (3) he was aware of policies that called for a 48-hour waiting period before interviewing an officer involved in a deadly force encounter; (4) he relied on other unspecified sources and independent interviews of people; (5) he had the opportunity to speak with an officer shortly after a deadly force encounter and was able to "verify some of the things [he] had researched earlier"; and (6) he recalled his own personal experience as a Marine. Id. at 590, 263 P.3d 372. The officer acknowledged that he had no formal training, had written no books or articles, and had not passed a qualifying exam, but that his expertise "derived from reading some material by one author and one institute and from familiarity with one or two public documents." Id. at 591, 263 P.3d 372. We concluded, "That is not the stuff of expertise; if it were, any literate person with access to a library or an Internet connection could become an expert in anything over one long weekend. Our standards are higher." Id .
Here, neither McClaren's biomechanical engineering expertise nor his accident reconstruction expertise is derived from minimal personal experience and review of publications on the topic. First, with respect to biomechanical engineering, McClaren earned two different certificates in the field, both of which required successful completion of several courses, and he has previously been qualified as a biomechanical engineering expert. That education and experience is the stuff of expertise. We do not simply assume disqualification from the lack of a biomechanical engineering degree. See Rogers , 330 Or. at 316, 4 P.3d 1261. Thus, the trial court erred in excluding McClaren as an expert witness in biomechanical engineering.
Second, with respect to accident reconstruction, McClaren earned a certificate that required 160 hours of crash investigation training, 80 hours of crash reconstruction training, and a passing score on an eight-hour examination. Further, McClaren has been employed three times *327 as an accident reconstructionist since receiving that certification. Under OEC 702, McClaren need only be qualified as an expert by "knowledge, skill, experience, training, or education," and his certifications and experience are sufficient to satisfy that liberal standard. Woodbury , 289 Or. App. at 115, 408 P.3d 267 (emphasis in original). Thus, the trial court erred in concluding that McClaren did not qualify to testify as an expert in accident reconstruction.
Our conclusion that the trial court erred in disqualifying McClaren's testimony under OEC 702 does not end the inquiry. Not every evidentiary error requires reversal. Despite an evidentiary error, we will affirm the judgment if there is "little likelihood that the particular error affected the verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). "In making that determination, we consider the possible influence of the error on the verdict that the jury rendered." Dunning , 245 Or. App. at 591, 263 P.3d 372. "We also consider whether the finder of fact would have regarded the evidence as duplicative, cumulative, or unhelpful." Woodbury , 289 Or. App. at 116, 408 P.3d 267. In this case, we cannot conclude that the error in excluding McClaren as an expert witness was harmless, because the excluded testimony would have been relevant to plaintiff's theory of the case and it would have been qualitatively different from the other evidence presented.
As illuminated by the OEC 104 hearing, the parties understood McClaren's expert testimony to address how the accident occurred and how that type of accident would have affected plaintiff's body. Plaintiff argues *736 that McClaren's testimony would be helpful to explain to the jury the particulars of the accident and how the accident affected the extent of plaintiff's injuries. Plaintiff further contends that "[t]estimony demonstrating to the jury how exactly the side-impact collision occurred, and how that side-impact affected the physical integrity of Plaintiff's spine differently than, for instance, a rear-end collision, would stand as strong evidence that the collision was more likely than not the cause of Plaintiff's prolonged pain and suffering." Defendant asserts that the trial court's exclusion of McClaren's testimony was harmless because there was no dispute about who was at fault for the accident or that the accident caused plaintiff injuries. Defendant also argues *328 that, because photographs of the accident were admitted into evidence, the jury "was equally as capable as an accident reconstructionist of drawing conclusions that the motor vehicle accident was capable of causing a person physical injuries." We agree with plaintiff.
In a case where the only issue before the jury is the amount of noneconomic damages that plaintiff suffered, we cannot conclude that an expert opinion in biomechanical engineering or in accident reconstruction had little likelihood to affect the verdict. Although it is true that defendant admitted liability for the accident, the nature and extent of plaintiff's injuries from the accident was disputed at trial. For instance, plaintiff argued that there was a "tremendous impact" that caused significant pain and suffering, whereas defendant's expert, Dr. Mangum, testified that it was a "decent accident" and that it caused a "moderate" amount of damage. Further, McClaren's testimony as a biomechanical engineer and an accident reconstructionist would have been qualitatively different from his testimony in his capacity as a chiropractic physician. McClaren's testimony as a chiropractor related to the treatment of patients with neck and back injuries from car accidents generally, without any specificity to this particular plaintiff and this particular accident. Testifying as a biomechanical engineer and accident reconstructionist, McClaren could have explained to the jury how this particular accident occurred and how it affected this particular plaintiff. That type of specificity is central to plaintiff's case, where the sole issue is the extent of plaintiff's pain and suffering due to the accident. In short, we cannot say that there was little likelihood that the exclusion of McClaren's testimony as an expert in biomechanical engineering and accident reconstruction affected the jury's verdict. Because the error was therefore not harmless, we reverse and remand.
Reversed and remanded.

We understand the references to "biomechanical engineering," "injury biomechanical expert," and "biomechanical expert" to all refer to the field of biomechanical engineering, and we use those terms interchangeably in this opinion.

OEC 702 provides:
"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Given our disposition, we need not address plaintiff's remaining assignments of error.

In addition to being distinguishable on its facts, Myers was decided under a different standard of review. In Myers, the Supreme Court applied an abuse of discretion standard in reaching its conclusion that the trial court did not err. 275 Or. at 520, 553 P.2d 355. Thereafter, the Supreme Court clarified that an appellate court "reviews without deference for errors of law whether a trial court properly applied OEC 702 to decide whether an expert is qualified to give testimony relative to a particular topic , because that determination is a question of the application of law." Rogers , 330 Or. at 315, 4 P.3d 1261 (emphasis in original). Since Rogers , we have consistently applied the legal error standard of review when determining the admissibility of expert testimony under OEC 702. See, e.g., State v. Rivera-Ortiz , 288 Or. App. 284, 285, 406 P.3d 73 (2017), rev. den. , 362 Or. 665, 415 P.3d 587 (2018) ; Woodbury , 289 Or. App. at 114, 408 P.3d 267 ; Dunning , 245 Or. App. at 589-90, 263 P.3d 372 ; Fedorov and Fedorov , 228 Or. App. 50, 60, 206 P.3d 1124, rev. den. , 347 Or. 42, 217 P.3d 688 (2009).