SHORR, J.
*622 Defendant appeals from a judgment of conviction for manslaughter in the second degree (Count 1), ORS 163.125, and two counts of assault in the fourth degree (Counts 2 and 3), ORS 163.160.[1] The convictions arose out of a car crash in which the vehicle that defendant was driving collided with another vehicle, killing defendant's passenger and injuring the driver and passenger of the other vehicle. Defendant raises five assignments of error on appeal. We write to address only defendant's fifth assignment of error, that the trial court erred in determining that a nurse who drew defendant's blood at the hospital was qualified to give opinion testimony that people should not consume alcohol while taking antiseizure medication. We conclude that, on the record before us, the witness was not qualified to testify as an expert regarding the effect of combining alcohol and antiseizure medication. We also conclude that the trial court's error was not harmless. Consequently, we reverse and remand on Counts 1, 2, and 3 and otherwise affirm.[2]
We summarize all the evidence relevant to a trial court's admission of testimony under OEC 702. State v. Brown , 294 Or. App. 61, 62, 430 P.3d 160 (2018). The state presented evidence that defendant and his roommate, Spinney, drove from their home in Alsea, Oregon, to see a friend's band play at a bar in Lebanon, Oregon. Defendant admitted to consuming at least three alcoholic drinks over the course of the evening.[3] After the *369 band finished playing, around 1:30 a.m., defendant and Spinney left the bar, intending to drive back to Alsea. Defendant was driving and Spinney was in the passenger seat. The weather was windy and rainy after defendant left the bar, and visibility was limited. Defendant ran a stop sign while travelling at a speed of *623 approximately 45 miles per hour and struck another vehicle. Spinney was killed as a result of the collision, and the two passengers in the other vehicle were injured.
When police arrived on the scene, defendant was responsive and did not have any major injuries. A detective noticed that defendant was limping and that his eyes were bloodshot. Defendant agreed to accompany the detective to a nearby hospital to give blood and urine samples. At the hospital, a registered nurse, Atchley, checked defendant for injuries and drew his blood at around 3:51 a.m. A phlebotomist drew a second blood sample approximately half an hour later. From these two blood samples, defendant's blood-alcohol content (BAC) was determined to be .059 percent and .052 percent, respectively.
Defendant was indicted for one count of manslaughter in the first degree, ORS 163.118, for Spinney's death; two counts of assault in the third degree, ORS 163.165, one count for each of the two passengers of the other vehicle; and one count of DUII, ORS 813.010. The case proceeded to a jury trial.
At trial, an expert for the state testified that, using retrograde extrapolation, defendant's BAC at the time of the accident was likely within the range of .082 and .106 percent. Pertinent to this case, "[a] person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person *** [h]as 0.08 percent or more by weight of alcohol in the blood." ORS 813.010 (1)(a).
Defendant's theory at trial was that he had a seizure at the time of the accident. Defendant suffers from a seizure disorder for which he takes medication twice per day. He testified that he last took his medication on the morning of the accident, before he and Spinney left for Lebanon. Defendant reported that he missed his second dose of medication that evening. One of the responding deputies testified that defendant told him that "bad things" could happen if he misses a dose. Defendant also testified that the seizure medication was his "stupid pill" because it made concentrating and multitasking difficult for him. Defendant testified *624 that the prescription sheet for his antiseizure medication instructed him that drinking in moderation was permitted.[4]
As an element of the crimes of manslaughter and assault, the state was required to prove at trial that defendant acted with a reckless mental state.[5] ORS 163.125(1)(a) ; ORS 163.160(1)(a). The state's theory of recklessness was, in part, that defendant disregarded a risk when he mixed alcohol and antiseizure medication. On this point, the state called Atchley, the nurse who drew defendant's blood at the hospital, as an expert witness. Atchley testified to the following: (1) that she had been a registered nurse since 2007; (2) that she had a four-year degree in nursing from Oregon Health & Science University (OHSU), which required two years of prerequisite classes and two years of nursing courses "where we do clinicals, learn skills, learn review of systems, you know, just a little about everything that you need to be a nurse"; (3) that she passed the NCLEX national standardized test for nursing; (4) that she reapplies for her license every two years; (5) that she was required to have *370 additional certifications in trauma, emergency nurse pediatric, basic life support, and advanced cardiac life support ; and (6) that her daily tasks involve "taking care of patients that come in, drawing blood, providing medications, doing assessments, whatever needs to be done to take care of whatever patients arrive."
After questioning Atchley about her observation of the events on the night of the accident, the state asked Atchley, "Based on your training and experience, are individuals supposed to consume alcohol while taking seizure medications?" She responded, "No." Defendant objected to the question "for lack of foundation." The state responded *625 that the question was asked "based on her training and experience." The trial court then overruled defendant's objection.
During closing argument, the state reiterated Atchley's testimony that mixing antiseizure medication and alcohol was not advised, to support the state's theory of defendant's recklessness:
"What was the reckless conduct that night? What did the Defendant do? He was drinking while taking his medications. ***
"* * * * *
"You heard from Katie Atchley, who was a nurse, an emergency room nurse, that drinking with seizure medications is not recommended."
The state also provided alternative theories of defendant's recklessness, including that he missed a dose of his medication, that he had been drinking, and that he could have taken a taxi or stayed with his sister who lived in Lebanon instead of driving that night. The jury acquitted defendant on the DUII charge, which is not at issue in this appeal, and convicted him of manslaughter in the second degree and two counts of assault in the fourth degree. Defendant now appeals his convictions.
On appeal, defendant assigns error to the trial court's determination that Atchley was qualified as an expert under OEC 702 to testify that people should not consume alcohol while taking antiseizure medication. We review for legal error a trial court's determination of whether a witness is qualified to testify about a particular topic. State v. Althof , 273 Or. App. 342, 344, 359 P.3d 399 (2015), rev. den. , 358 Or. 550, 368 P.3d 25 (2016). OEC 702 provides that,
"[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."
A witness's competency to testify is relative to the particular topic about which the witness is asked.
*626 Myers v.Cessna Aircraft , 275 Or. 501, 521, 553 P.2d 355 (1976). " 'A person may be sufficiently skilled upon one question, and totally unskilled upon the next.' " Id. (quoting John Henry Wigmore, 2 Wigmore on Evidence § 555, at 634 (3d ed. 1940) ). A witness is not presumed to be disqualified merely because the witness lacks a particular degree. State v. Rogers , 330 Or. 282, 316, 4 P.3d 1261 (2000). However, a witness still needs to demonstrate her expertise relative to the topic about which she is asked to make her statement. Meyer v. Harvey Aluminum , 263 Or. 487, 489, 501 P.2d 795 (1972). Our cases emphasize "the knowledge of the expert, rather than the expert's particular medical degree or specialty, when examining the qualifications of medical experts." Trees v. Ordonez , 354 Or. 197, 210, 311 P.3d 848 (2013). For instance, a registered nurse's competency to testify as an expert under OEC 702 can be established exclusively through the nurse's professional experience if the experience provides the nurse with "specialized knowledge" from which to testify. See State v. Woodbury , 289 Or. App. 109, 115, 408 P.3d 267 (2017) (holding that a registered nurse's experience working with patients with traumatic brain injury (TBI) qualified her to testify as an expert about the behaviors and mannerisms of TBI patients).
Here, there is insufficient evidence in the record to establish that Atchley had relevant training or education to form a basis for specialized knowledge about the specific question of whether people are supposed to mix antiseizure medication and alcohol. Atchley had a bachelor's degree in nursing and *371 was a registered nurse. As part of her course-work toward her degree, Atchley had taken two years of nursing courses at OHSU and was certified in trauma, emergency room pediatrics, basic life support, and advanced cardiac life support. A conclusion that her education and training encompassed the risks of mixing specific medications and alcohol would require us to make an assumption that, during her years at nursing school and in her certification training, Atchley learned about antiseizure medications, drug interactions, pharmacology, or some other related field that would give her a basis of knowledge to answer the question. While that assumption might prove true, there is no support for it in the record. *627 It also is not apparent from the record that Atchley's experience as an emergency room nurse established that she had gained "specialized knowledge" relevant to the question that she was asked. Atchley testified that her duties included "taking care of patients that come in, drawing blood, providing medications, doing assessments, whatever needs to be done to take care of whatever patients arrive." Atchley's statement that she had experience "providing medications" indicates that she indeed had some general familiarity with administering medications; however, there is no indication that her responsibilities would have given her a basis of knowledge about how the specific antiseizure medication involved here, Levetiracetam, would interact with alcohol. There is also no indication in the record that Atchley had ever provided a patient with that or any other antiseizure medication, had otherwise worked with seizure patients, or had any other relevant experience that would provide her with the kind of "specialized knowledge" that OEC 702 requires. We also note that registered nurses in this state do not have the right to prescribe pharmaceutical drugs. See ORS 678.390 (Board of Nursing may authorize only certified nurse practitioners and certified clinical nurse specialists to write prescriptions); accord OAR 851-056-0004 (defining the scope of practice for "advanced practice registered nurses" to include prescribing).
The state argues that, because Atchley was a registered nurse, she was qualified to testify generally based on her training and experience, and that OEC 702 does not require her to have a particular degree or more specialized knowledge. To support its position, the state relies on Barrett v. Coast Range Plywood , 294 Or. 641, 647, 661 P.2d 926 (1983), in which the Supreme Court held that physicians were qualified to testify about the effect of a mental condition, even though the physicians were not psychologists or psychiatrists, because diagnosing the mental condition was generally within the physicians' field of knowledge. In Barrett , a workers' compensation case, the Workers' Compensation Board refused to consider any medical evidence about the claimant's psychological "functional overlay" that had not been offered by a psychologist. Several physicians-including two neurosurgeons, an orthopedic consultant, *628 and a treating doctor-had diagnosed the claimant with "functional overlay" related to his back injury. That is, they opined that the claimant was suffering from a psychological component of his physical injury that existed even though there might no longer have been any structural defect directly causing that pain. See id . at 643-44, 661 P.2d 926. The board disregarded evidence regarding the functional overlay diagnosis because the physicians were not psychologists and the claimant had not undergone a psychological examination. In rejecting the board's reasoning, the Supreme Court held that physicians generally were competent to provide expert opinions about the diagnosis of psychological functional overlay, and that the witnesses' lack of specialization went to the weight of their testimony and not its admissibility. Id. at 648-49, 661 P.2d 926.
The state argues that, as in Barrett , Atchley was generally qualified as a registered nurse to testify about the risks of mixing antiseizure medication and alcohol, and that expertise within a specialized field of nursing was not necessary. Barrett , however, is distinguishable from this case. In Barrett , the court could, on the record before it, conclude that the physicians who had reviewed the claimant's physical injury were generally competent based on their medical degrees *372 and background to provide expert opinions about the psychological aspects of that injury as well, even if they were not psychiatrists or psychologists. In contrast, there is no evidence in this record that, as a general matter, the interaction of specific medications with alcohol is within the general competency of registered nurses, which is the threshold question for admissibility. Of course, as the Supreme Court has noted, we are to focus on "the knowledge of the expert * * * rather than on an expert's particular medical degree or area of specialty." Trees , 354 Or. at 209, 311 P.3d 848. However, Atchley's testimony regarding her specific education, training, and experience does not provide further support for her competency to testify as an expert on the interaction between antiseizure medications and alcohol. It is entirely possible that Atchley was qualified to testify on this point, but, on the thin record before us, we cannot so conclude without making assumptions about Atchley's specific education, training, and experience, or that of registered nurses in general. We *629 conclude, therefore, that the trial court erred in determining that Atchley was qualified to testify about whether people may mix alcohol and antiseizure medication.
We must now consider whether that error was harmless. An evidentiary error is not grounds for reversal unless the error is prejudicial. State v. Dunning , 245 Or. App. 582, 591, 263 P.3d 372 (2011). An error is harmless if there is little likelihood that the error affected the verdict. Id . We consider the nature of the error and the context in which it occurred. Woodbury , 289 Or. App. at 116, 408 P.3d 267. "We also consider whether the finder of fact would have regarded the evidence as duplicative, cumulative, or unhelpful." Id .
The state argues that any error was harmless because Atchley's testimony was so general and minimal that it "provided virtually no helpful information to the jury" and was therefore unlikely to have affected the verdict. That argument, however, is undermined by the state's own argument at trial. As defendant points out, the state relied on Atchley's testimony for its theory of defendant's recklessness. During closing argument, the state argued that defendant was reckless for mixing alcohol and antiseizure medication:
"What was the reckless conduct that night? What did the Defendant do? He was drinking while taking his medications. Although he insinuates that his doctor told him he could take it in moderation, none of the medical records that are in evidence state as much. ***
"* * * * *
"You heard from Katie Atchley, who was a nurse, an emergency room nurse, that drinking with seizure medications is not recommended."
Because the state relied on Atchley's testimony to support its theory of defendant's recklessness, we cannot conclude that the error in admitting her testimony was harmless. Although the state argued several alternative theories of recklessness at trial, including that defendant failed to take his medication that evening and that he had been drinking, Atchley's testimony went directly to one of the theories on which the state asked the jury to rely. We, therefore, cannot *630 say that there was "little likelihood" that the error affected the verdict. Because the trial court's error was not harmless, we must reverse and remand.
Reversed and remanded on Counts 1, 2, and 3; otherwise affirmed.

Defendant was acquitted on the fourth count of driving under the influence of intoxicants (DUII), ORS 813.010.

Because we reverse and remand based on defendant's fifth assignment of error, we do not address defendant's assignments one through four.

Defendant admitted to drinking one rum and coke earlier in the day, another rum and coke around 9:30 p.m., and a third rum and coke from which other people also drank. Defendant also said he poured leftover ice from other peoples' drinks into his glass.

The prescription sheet itself was not offered into evidence.

Defendant was initially indicted for first-degree manslaughter and two counts of third-degree assault, ORS 163.165, both crimes that required the state to prove that defendant acted recklessly "under circumstances manifesting extreme indifference to the value of human life." ORS 163.118(1)(a) ; ORS 163.165(1)(b). At the close of the state's evidence, the trial court granted defendant's motion for judgment of acquittal on those charges because the state had not presented evidence sufficient to meet its burden regarding defendant's alleged extreme indifference to the value of human life. The state was permitted to proceed on the lesser-included offenses of second-degree manslaughter and fourth-degree assault, which required the state to prove mere recklessness.