Argued and submitted July 23, reversed and remanded September 9, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
JAMES JOSEPH THRELKELD,
*Defendant-Appellant.*
Multnomah County Circuit Court
19CR22946; A172263

496 P3d 1147

Defendant appeals a judgment of conviction for carrying a concealed weapon, specifically a dagger. ORS 166.240. During defendant's bench trial, the arresting officer testified that the item that defendant carried in his back pocket was a knife designed for stabbing. Defendant contends that the testimony was improperly admitted as expert testimony under OEC 702 and that it affected the verdict. *Held*: The trial court erred in admitting the officer's testimony under OEC 702 because, under this record, the officer's training went to defensive tactics in response to various weapons, not to how a knife could be used as a weapon, as he testified during trial. Moreover, because the court relied on that testimony in denying defendant's motion for judgment of acquittal, which suggests that the court also erred in making its ultimately factual determination in that the weapon was a "dagger" for purposes of ORS 166.240(1), the error was not harmless.

Reversed and remanded.

Andrew M. Lavin, Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals a judgment of conviction for carrying a concealed weapon, specifically a dagger. ORS 166.240. During defendant's bench trial, the arresting officer testified that the item that defendant carried in his back pocket was a knife designed for stabbing. Defendant contends that the testimony was improperly admitted as expert testimony and that it affected the verdict.[1] We agree with defendant and reverse.

Officers responded to reports of defendant standing in front of a pharmacy "rambling and holding a knife." After a pat-down search, the arresting officer discovered a sheathed knife concealed in defendant's back pocket. The knife was about five inches long, was sharpened on both sides, and contained the words "black label tactical blade" and "letter opener 125 BL." Defendant was charged with carrying a concealed weapon, specifically, a dagger.

At trial, the arresting officer testified in detail about the attributes and function of the knife. The officer explained that learning about knives was "woven into" a week-long portion of his basic corrections academy training approximately twenty years earlier. That training covered defensive tactics, including the type of weapons that individuals may carry on their person, what type of damage those weapons can do, and how to defend against them. He also testified that his annual police training involves a defensive tactics refresher training, which, at times, has included the use of knives. Defendant objected to the officer's qualifications to provide an expert opinion about the design and purpose of the knife, but the trial court overruled that objection, concluding that the state had laid a proper foundation.

The officer further testified that the knife found in defendant's pocket "is specifically designed to cause serious physical injury and trauma." He opined as to the existence of a raised portion of the knife known as "blood groove," a feature typically located on military knives and bayonets specifically designed to cause "trauma to whatever the knife

---

[1] In light of our resolution of defendant's first assignment of error, we do not reach defendant's remaining assignments of error.

is stabbed into." Additionally, according to the officer, the sharpened blades on both sides of the knife were for the purpose of causing trauma and the handgrip was designed to facilitate a stabbing motion. On cross-examination, the officer acknowledged that he was "not, by any means, a professional on knives," nor was he a "knife expert."

At the close of the state's evidence, defendant moved for a judgment of acquittal, arguing that the state had failed to present sufficient evidence to conclude that the item in defendant's pocket was a "dagger." The trial court denied the motion, relying on our decision in *State v. McJunkins*, 171 Or App 575, 579, 15 P3d 1010 (2000), which described a dagger as "generally slender, straight, and coming to a point. Its function is to stab, historically to pierce armor." Because the knife met that physical description, and the officer testified that the knife's function was to stab, the court denied the motion for judgment of acquittal.

On appeal, defendant renews his argument that the officer was not qualified to testify as an expert under OEC 702. We review for legal error whether a trial court properly applied OEC 702 in deciding whether an expert is qualified to testify. *Mall v. Horton*, 292 Or App 319, 323, 423 P3d 730, *rev den*, 363 Or 744 (2018).

Defendant challenges the arresting officer's qualifications to provide expert testimony about the function of the item in his pocket. OEC 702, which serves a "gatekeeping function" for the admission of expert testimony, *Mall*, 292 Or App at 323, provides:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Defendant argues that the record does not support a finding the officer was qualified as an expert by knowledge, skill, experience, training, or education. To make that determination, we look to "the knowledge of the expert" rather than the expert's particular degree or specialty." *State v. Wendt*, 294 Or App 621, 626, 432 P3d 367 (2018). Specifically, an expert

on a given subject is a person who "has acquired certain habits of judgment based on experience or special observation that enable[] him or her to draw from the facts inferences that are uniquely beneficial to the [factfinder]." *Mall*, 292 Or App at 324. That experience must provide knowledge beyond a "general familiarity." *State v. Brown*, 294 Or App 61, 69, 430 P3d 160 (2018); *see also State v. Dunning*, 245 Or App 582, 591, 263 P3d 372 (2011) (stating that expertise is more than what "any literate person with access to a library or an Internet connection" can learn about a subject "over one long weekend"). A witness's competency to testify must be evaluated in relation to the particular topic about which the witness is asked. *Wendt*, 294 Or App at 625.

The topic on which the officer opined was the function of a knife. The officer's expertise draws from two sources: (1) a week-long corrections academy training during which knives were "woven into" defensive tactics training, and (2) annual police trainings that "at times" cover defensive tactics relating to knives. Essentially, the officer's training went to defensive tactics in response to various weapons, including knives. The officer, however, did not testify as to how to defend against a knife or how a knife could be used as a weapon. Rather, he opined as to the purpose of a specific knife. This record does not contain sufficient qualifications to provide "specialized knowledge" as an expert on that specific question. *See id.* at 626 (recognizing that general training in nursing here is insufficient to establish "relevant training or education to form a basis for specialized knowledge about the specific question" relating to mixing antiseizure medication and alcohol).

The state does not vigorously defend the admission of the testimony under OEC 702, but rather argues that it was not required to present expert testimony of the function of the knife at all because its purpose could be deduced from its inherent nature—a five-inch long blade with sharp edges contained in a sheath. Regardless of whether the state was required to present the evidence, we must evaluate if the trial court properly admitted the evidence that it did provide. On this record, the officer lacked sufficient expertise to testify as to the purpose of the knife.

Having concluded that the trial court erred, we must now determine whether the error was harmless. We do not reverse an evidentiary error if it is harmless, that is, if there is little likelihood that the error affected the verdict. *Wendt*, 294 Or App at 629.

The dispute in this case turned on whether the knife found in defendant's pocket was a "dagger." ORS 166.240(1) prohibits the concealed carry of "any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, any dirk, dagger, ice pick, slungshot, metal knuckles, or any similar instrument by the use of which injury could be inflicted." We have previously observed that "[t]he statute does not prohibit carrying a concealed knife. It only prohibits the carrying of three specific types of knife, namely, a switchblade, a dirk, and a dagger." *McJunkins*, 171 Or App at 578 (internal quotation marks omitted). As relevant here, "a dagger is generally slender, straight, and coming to a point. Its function is to stab, historically to pierce armor." *Id*. at 579.

The trial court's decision on defendant's motion for judgment of acquittal suggests that the court likely relied on the officer's expert opinion to determine that the knife was a dagger when it found defendant guilty of the offense. The trial court first observed that *McJunkins* "makes clear that in determining whether a particular weapon is a dagger, the weapon's function and purpose are important *** [and] the weapon's purpose must include stabbing." The court concluded that the physical nature of the knife is "consistent with that of a dagger," and reasoned:

"It is a slender, straight blade that comes to a point.

"In addition, we have testimony from the State's witness about Exhibit 1's function that was not present in *McJunkins*. According to [the officer], the weapon's physical nature is consistent with a purpose and function that includes use as a stabbing weapon. That nature includes the sharpness of the point, the sharpness of both the blade[']s edges, as well as what the officer described as the weapon's blood groove, as well as the weapon's grip.

"Although I find it to be somewhat problematic that [the officer] declined to describe himself as a knife expert, while

at the same time offering his opinions related to knives based on his training and experience with them, I do not find [his] refusal to describe himself as an expert as dispositive as to whether his opinions are founded and reliable and admissible under OEC 702.

"Instead, I rely on his description of his training and experience with knives, and given that description, I conclude that he has sufficient knowledge to offer an opinion as to Exhibit 1's characteristics and function."

Because the trial court explicitly relied on the officer's opinion, as admissible evidence under OEC 702, in concluding that the knife was a "dagger," we cannot say that the error was harmless.

The state argues that the trial court's discussion of the officer's testimony as to the function of the knife was "superfluous" because the knife's physical characteristics demonstrate that it is a dagger, and that the officer could testify as to those physical characteristics without being qualified as an expert. Although the testimony theoretically could have been admitted in that way, it was not. Rather, the trial court erroneously admitted the officer's testimony under OEC 702 and then relied on that testimony in denying defendant's motion for judgment of acquittal, which suggests that the court also erred in making its ultimately factual determination in that the weapon was a "dagger" for purposes of ORS 166.240(1). As a result, we cannot conclude that the error was harmless. We accordingly reverse the judgment of conviction and remand for further proceedings.

Reversed and remanded.