Argued and submitted July 20, 2021, affirmed June 8, petition for review denied October 6, 2022 (370 Or 303)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRISHA DELAURENT,
aka Trisha Lee Gaddis,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR73845; A170921

514 P3d 113

Defendant appeals from a judgment of conviction for two counts of interception of communications, ORS 165.540. She assigns error to the trial court's refusal to give her requested jury instructions providing that a district attorney is a "law enforcement officer" for the purpose of ORS 165.540. *Held*: The text, context, and legislative history demonstrate that the legislature did not intend to include a district attorney as a "law enforcement officer" for the purpose of the wiretapping statute, ORS 165.540. Therefore, the trial court did not err when it refused to give defendant's requested jury instructions.

Affirmed.

Kenneth R. Walker, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Kamins, Judge, and DeHoog, Judge pro tempore.*

KAMINS, J.

Affirmed.

DeHoog, J. pro tempore, concurring.

_____

* Shorr, P. J., *vice* Sercombe, S. J.; Kamins, J., *vice* DeVore, S. J.

KAMINS, J.

Defendant appeals from a judgment of conviction for two counts of interception of communications, ORS 165.540. She assigns error to the trial court's refusal to give her requested jury instructions providing that a district attorney is a "law enforcement officer" for the purpose of ORS 165.540. We conclude that a district attorney is not a "law enforcement officer" as defined by ORS 165.540, and therefore affirm.

The events leading to the criminal prosecution stemmed from a juvenile dependency case involving the supervision of defendant's children by the Department of Human Services (DHS). In 2017, defendant recorded two meetings using her cell phone without announcing that she would be recording. Among the meeting attendees were several DHS personnel and the deputy district attorney prosecuting the dependency case. Those recordings were eventually posted on an internet website and seen by both DHS and the deputy district attorney who attended the meeting. Defendant was charged with two counts of interception of communications in violation of the wiretapping statute, ORS 165.540.

At trial, defendant gave various reasons for why she recorded the meeting, but the reason relevant to this appeal was that she believed that it was legal to record a deputy district attorney, pursuant to the exception provided in ORS 165.540(5)(b) for the recording of "law enforcement officer[s]." Defendant requested a jury instruction that was specific to that exception for each count, and a jury instruction regarding the constitutional meaning of "district attorney." The trial court refused to give the requested jury instructions, concluding that district attorneys are not "law enforcement officer[s]" as used in ORS 165.540. The jury ultimately found defendant guilty of both counts.

We review a trial court's refusal to give a requested jury instruction for legal error. *State v. Payne*, 366 Or 588, 603, 468 P3d 445 (2020). A criminal defendant is entitled to have the jury instructed in accordance with their theory of the case "if the instruction correctly states the law and

there is evidence to support giving it." *State v. McNally*, 361 Or 314, 320, 392 P3d 721 (2017).

Whether defendant's requested instructions are an accurate statement of the law presents a question of statutory construction. ORS 165.540, the wiretapping statute, "with certain relevant exceptions, prohibits the interception of [private] conversations unless all of the parties to the conversation 'are specifically informed that their conversation is being obtained.'" *State v. Miskell/Sinibaldi*, 351 Or 680, 687, 277 P3d 522 (2012) (quoting ORS 165.540(1)(c)). The exception at issue is ORS 165.540(5)(b), which exempts "[a] person who records a conversation in which a law enforcement officer is a participant" from the statutory prohibition, subject to certain conditions.[1] ORS 165.540(10)(b) provides that "[l]aw enforcement officer has the meaning given that term in ORS 133.726." (Internal quotation marks omitted.) ORS 133.726(11)(a), in turn, defines law enforcement officer as "[a]n officer employed to enforce criminal laws."[2] The

---

[1] ORS 165.540(5) provides that the prohibitions provided in ORS 165.540(1)(c) do not apply to, as relevant here:

"(b) A person who records a conversation in which a law enforcement officer is a participant, if:

"(A) The recording is made while the officer is performing official duties;

"(B) The recording is made openly and in plain view of the participants in the conversation;

"(C) The conversation being recorded is audible to the person by normal unaided hearing; and

"(D) The person is in a place where the person lawfully may be[.]"

It is undisputed that the conditions in ORS 165.540(5)(b)(A) to (D) are met. The only dispute on appeal is whether the deputy district attorney was a "law enforcement officer."

[2] The full text of ORS 133.726(11) provides:

"As used in this section, 'law enforcement officer' means:

"(a) An officer employed to enforce criminal laws by:

"(A) The United States, this state or a municipal government within this state;

"(B) A political subdivision, agency, department or bureau of the governments described in subparagraph (A) of this paragraph; or

"(C) A police department established by a university under ORS 352.121 or 353.125;

"(b) An authorized tribal police officer as defined in ORS 181A.940; or

"(c) A regulatory specialist as defined in ORS 471.001."

question we must resolve, then, is whether a deputy district attorney is "[a]n officer employed to enforce criminal laws."[3]

Defendant argues that the plain meaning of the phrase "an officer employed to enforce criminal laws" clearly includes a district attorney. The state concedes that the plain meaning of the relevant terms could plausibly encompass a district attorney, but that the context and legislative history indicate that the legislature did not intend for district attorneys to be included in the definition of "law enforcement officer." Defendant responds that the text and context of the wiretapping statute show that the term "law enforcement officer" is intended to include district attorneys. Moreover, defendant maintains, even if the legislative history indicates that the exception in this case was enacted to address a narrower category of law enforcement officers, such as police officers, that does not mean the statutory definition applies only in that more limited circumstance. *See State v. Walker*, 356 Or 4, 21-22, 333 P3d 316 (2014) (where the legislature had acknowledged the broad language contained in the statute, the court would not choose to narrow it).

To determine whether a district attorney is a "law enforcement officer"—that is, an "officer employed to enforce criminal laws"—we must first ascertain the roles and responsibilities of district attorneys, which are outlined in a variety of statutory and constitutional provisions. "District attorneys shall possess the qualifications, have the powers, perform the duties and be subject to the restrictions provided by the Constitution for prosecuting attorneys[.]" ORS 8.630. The Oregon Constitution defines prosecuting attorneys as "the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct." Or Const, Art VII (Original), § 17. District attorneys are further defined by ORS 8.650 as "the public prosecutor" with "the authority to appear and prosecute violations of the charter and ordinances of any city" in its jurisdiction. Additionally, the district attorney prosecutes and defends all actions to

---

[3] Because the distinction between a district attorney and a deputy district attorney does not affect the analysis, we use the terms interchangeably.

which the state or a county are a party. ORS 8.680; ORS 8.690. Taken together, the duties of a district attorney are to prosecute violations of laws and, in some circumstances, to prosecute and defend actions in which the state or county are parties.

To determine whether those duties fit the definition of "law enforcement officer" as used in the wiretapping statute, "[w]e ascertain the legislature's intentions by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)). When the legislature provides a definition of a statutory term, we use that definition. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014). Here the wiretapping statute defines "law enforcement officer" by reference to the definition provided in ORS 133.726. ORS 165.540(10)(b). ORS 133.726 defines a "law enforcement officer" as "[a]n officer employed to enforce criminal laws." ORS 133.726(11)(a). Accordingly, we must determine the meaning of "[a]n officer employed to enforce criminal laws."

"In the absence of any evidence to the contrary, we assume that the legislature intended to give those words their 'plain, natural, and ordinary meaning,'" relying on dictionaries that were in use at the time the statute was enacted. *State v. Ziska/Garza*, 355 Or 799, 804-05, 334 P3d 964 (2014) (quoting *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993)).[4] Of the many definitions of "officer," the most relevant include "1a: one charged with a duty : agent b: one charged with administering and maintaining the law (as a constable, bailiff, sheriff)." *Webster's Third New Int'l Dictionary* 1567 (unabridged ed 2002). That definition also includes "one who holds an office: one who is appointed or elected to serve in a position of trust,

_____

[4] Defendant also cites to Wikipedia, the ACLU of Oregon's website, and the Oregon District Attorney's proposed budget as support for her plain meaning argument. Those are not persuasive authorities for our analysis of what the legislature intended. *See Chiles v. Dept. of Rev.*, 22 OTR 175, 178 (2015) ("As an initial matter, the court does not find particularly authoritative an entry in Wikipedia. *** As Wikipedia's 'about' page indicates, the website is user-generated, largely by anonymous users[.]").

authority, or command esp. as specif. provided for by law."
*Id*. The relevant definitions of "enforce" include "to put in
force: cause to take effect: give effect to esp. with vigor" and
"constrain, compel" as in to compel obedience. *Id*. at 751.

Applying those dictionary definitions to the words
used in ORS 133.726(11)(a) would mean that "[a]n officer
employed to enforce criminal laws" is any person charged
with administering the law who either gives effect to crimi-
nal laws or who compels obedience with criminal laws. That
definition would include not only police officers and district
attorneys, but also any person employed in the criminal
justice system, including judges, the state court adminis-
trator, court clerks, collection agents, and employees tasked
with sentence computation. Thus, the dictionary defini-
tions sweep too broadly to provide meaningful assistance
in determining whether the legislature intended that "[a]n
officer employed to enforce criminal laws" include a district
attorney.

We next turn to the context of the statute, which
includes other provisions of the same statute as well as
other related statutes. *Northwest Natural Gas Co. v. City of
Gresham*, 359 Or 309, 322, 374 P3d 829 (2016). The legisla-
ture's use of the same term throughout a statute indicates
that the legislature intended the term to have the same
meaning throughout. *McLaughlin v. Wilson*, 365 Or 535,
541, 449 P3d 492 (2019). In addition to the exception at issue
here, there are multiple other exceptions that apply to "law
enforcement officer[s]." For example, the statute exempts
from its requirements recordings by a law enforcement offi-
cer who is in uniform and displaying a badge who is operat-
ing either a vehicle-mounted camera or a body camera, ORS
165.540(5)(d); by a law enforcement officer deploying a taser,
ORS 165.540(5)(e); by a person who is attempting to capture
unlawful activity and is either a law enforcement officer, is
acting with a law enforcement officer, is acting in coordina-
tion with an attorney or an enforcement or regulatory entity,
or who reasonably believes the recording may be used as
evidence, ORS 165.540(6)(b). None of those exceptions covers
the activities of a district attorney in prosecuting violations
of the law—rather, they are directed at the actions by or on
behalf of police officers.

The context of the larger statutory scheme provides further insight. *See SAIF v. Ward*, 369 Or 384, 394, 506 P3d 386 (2022) (explaining that the context of a statute includes related statutes). The wiretapping statute and ORS 133.726 are both part of a "larger statutory scheme" governing the interception and recording of private conversations. *Miskell/Sinibaldi*, 351 Or at 686. The definition of "law enforcement officer" incorporated by reference into the wiretapping statute comes from ORS 133.726, which provides the process for obtaining an *ex parte* order allowing "a law enforcement officer * * * to wear a body wire in a sting operation or to otherwise intercept an oral communication to which the officer or a person under the direct supervision of the officer is a party." *Id.* at 688 (internal quotation marks omitted). That description is targeted to functions of police officers— district attorneys do not wear body wires in "sting" operations in the prosecution of crimes.

ORS 133.724 also sheds some light on the issue before us. That statute, which is explicitly referenced in the introductory phrases of both the wiretapping statute and ORS 133.726(1), sets out the process for obtaining an *ex parte* order permitting law enforcement to surreptitiously intercept communications. *Miskell/Sinibaldi*, 351 Or at 687. An application for obtaining such an order must include "[t]he name of the district attorney * * * making the application" and "[t]he identity of the investigative or law enforcement officer making the application and the officer authorizing the application[.]" ORS 133.724(1)(a), (b). Thus, both a law enforcement officer *and* a district attorney must present the application, suggesting that they are different entities. *See State v. Lane*, 357 Or 619, 629, 355 P3d 914 (2015) ("[T]he use of different terms usually is taken to connote different meanings to avoid redundancy[.]"). If "law enforcement officer" in the wiretapping statute and in ORS 133.726 includes district attorneys, then ORS 133.724(1)(b) would make little sense. *Cf. Cloutier*, 351 Or at 98 ([A]n interpretation that renders a statutory provision meaningless should give us pause[.]").

The legislative history of ORS 133.726 and of the law enforcement officer exception in the wiretapping statute conclusively establish that the legislature did not intend to

include district attorneys when using the term "law enforce-ment officer." The legislature added the language of ORS 133.726 defining "law enforcement officer" as "an officer employed \*\*\* to enforce criminal laws" in 2001. Or Laws 2001, ch 385, § 2. The change was part of a series of amend-ments aimed at "restor[ing] law enforcement's 'bodywire' authority to what apparently existed prior to the decisions of the Oregon Supreme Court." Exhibit K, Senate Committee on Judiciary, SB 654, Mar 12, 2001 (testimony of Erik Wasmann, Assistant Attorney General). The amendments were focused on activities specific to police—preserving the ability to conduct undercover investigations, where "[b]ody wires are an important means of ensuring officer safety[,]" and "ensure that the most accurate evidence is preserved." Exhibit I, House Committee on Judiciary, SB 654, May 24, 2001 (testimony of Peter D. Shepherd, Deputy Attorney General).

        The definition of "law enforcement officer" in ORS 133.726 was first incorporated into the wiretapping statute in 2007 through House Bill (HB) 2651, whose broader purpose was to "add[] a new exception for a law enforcement officer, if the officer is in uniform, displaying a badge, and operating a vehicle-mounted video camera that records the scene around a police vehicle[.]" Audio Recording, Senate Committee on Judiciary, HB 2651A, May 17, 2007, at 54:10 (statement of Counsel for the Oregon House and Senate Judiciary Committee, Darian Stanford), https://oregonlegislature.gov (accessed June 1, 2022); Or Laws 2007, ch 879, § 1. Dur-ing deliberations in front of the House Committee, Repre-sentative Suzanne Bonamici noted that the use of "law enforcement officer" was not the same as the language in a different bill, HB 2819 (2007), which used the term "pub-lic safety officer." Audio Recording, House Committee on Judiciary, HB 2651, Apr 4, 2007, at 1:37:37 (comment of Rep Suzanne Bonamici), https://oregonlegislature.gov (accessed June 1, 2022). Ultimately, that discussion about terminol-ogy ended with testimony from the person presenting HB 2819 saying, "you've got law enforcement in [HB 2651] and you've got public safety in [HB 2819], I'd have to look at that definition, but I think they're encompassing the same folks." *Id*. at 1:49:38 (comment of Brian DeLashmutt, representative

of Oregon Council of Police Associations and Oregon State Police Association). If the intent was to apply a similar definition to "public safety officer[s]," then that definition does not encompass district attorneys. *See, e.g.*, ORS 243.954 (defining a public safety officer as corrections officers, fire service professionals, parole and probation officers, police officers, and youth correction officers).

Finally, the legislative history for the specific exception permitting the recording of law enforcement officers at issue in this case, ORS 165.540(5)(b), further suggests that this provision was not intended to apply to the work of district attorneys. ORS 165.540(5)(b) was added in 2015 by HB 2704. Or Laws 2015, ch 553, § 1. The exception was viewed as "essential for protecting the right to record on-duty peace officers in Oregon." Exhibit 12, House Committee on Judiciary, HB 2704, Mar 12, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon). The chief sponsor of the bill stated that HB 2704 "clarifies that recording a law enforcement officer while the officer is performing official duties is not prohibited under the statute that protects private conversations." Video Recording, House Committee on Judiciary, HB 2704, Mar 12, 2015, at 50:24 (statement of Rep Lew Frederick), https://oregonlegislature.gov (accessed June 1, 2022). Representative Frederick also communicated that "[t]his bill does not change the offense of interfering with an officer, it simply says that recording the officer by itself is not interference." *Id*. at 49:41. Representative Mitch Greenlick commented that "I think the notion that recording a police officer while they're in official duties, while not interfering with whatever they're doing, just should be legal." *Id*. at 54:42.

When, during discussion of the bill, Representative Bill Post posed a hypothetical to the representative of the ACLU about a journalist trying to record a private conversation between two state representatives, a different member interjected that Post's question was off topic, because "we're talking about police recording." *Id*. at 1:09:15 (comment of unidentified committee member). In response to that hypothetical, the representative of the ACLU noted that the Supreme Court and circuit courts have held that "what

happens with police officers is different than everything else."
*Id*. at 1:09:49 (comment of Kimberly McCullough, Legislative
Director of the ACLU of Oregon). She acknowledged the dis-
comfort associated with always being on video but clarified
that "specifically with regards to police officers, I think that
that's a situation where it's just the unfortunate reality
*** but this is really important for accountability[.]" *Id*. at
1:10:03. That exchange demonstrates that the exception at
issue here was intended to apply to police officers in light of
the unique problems surrounding police accountability.

Despite that history, defendant argues that the leg-
islature could not have meant for "law enforcement officer"
to be the equivalent of a police officer, because the wiretap-
ping statute uses both "peace officer" and "law enforcement
officer" in different sections of the statute. According to
defendant, "law enforcement officer" must therefore be dif-
ferent from peace officer, such that it would include district
attorneys. *See Lane*, 357 Or at 629 (generally we construe
different terms to have different meanings). However, police
officers and peace officers as defined by ORS 181A.355(14)
and ORS 161.015(4) do not include federal law enforcement,
whereas the definition contained in ORS 133.726 expressly
does. ORS 133.726(11)(a)(A). Therefore, the terms do have
different meanings, and the use of "law enforcement officer"
would indicate the inclusion of federal officers, not necessar-
ily the inclusion of district attorneys.

Defendant ultimately acknowledges that the leg-
islative history pertaining to the "law enforcement officer"
exception was directed towards the work of police officers.
However, citing *Walker*, she contends that, even if the leg-
islative history indicates that a statute was enacted to
address a particular problem, when the text of the statute is
not limited to that situation, courts must interpret the stat-
ute more broadly. In *Walker*, the Supreme Court recognized
that the legislature may choose language that effectuates
a broader solution in an effort to more expansively address
the specific problem spurring the legislation and, in those
cases, the court should "take the legislature at its word."
356 Or at 21. The Supreme Court reviewed the legislative
history of the racketeering statute, which indicated that it
was enacted to deal with larger scale, more sophisticated

criminal activities than the ones presented in that case. *Id.* at 22. Indeed, members of the legislature had expressly acknowledged the breadth of the statute and the role of prosecutorial discretion in applying it. The Supreme Court reasoned, "For us to interpret the statute more restrictively than it was consciously drafted would require us to draw a line that the legislature itself declined to draw." *Id.*

That is not the scenario before us. Nothing in the legislative history suggests that the legislature ever, at any point in considering these statutes, understood the term "law enforcement officer" to be as expansive a term as defendant suggests. The text, context, and legislative history demonstrate that the legislature did not intend to include district attorneys as "law enforcement officer[s]" for the purpose of the wiretapping statute, ORS 165.540. Therefore, the trial court did not err when it refused to give defendant's requested jury instructions.[5]

Affirmed.

**DeHOOG, J. pro tempore,** concurring.

In her brief on appeal, defendant states: "The issue in this case is whether a deputy district attorney is a 'law enforcement officer' for purposes of ORS 165.540." Defendant further notes that the issue she raises is a question of statutory interpretation, which we answer in accordance with our traditional approach under *PGE v. Bureau of Labor and Industries*, 317 Or App 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Given that the rulings that defendant challenges on appeal relate to the trial court's refusal to instruct the jury in accordance with defendant's interpretation of ORS 165.540, that all seems perfectly correct. And given that the majority opinion does an admirable job of working through the statutory analysis before concluding that defendant's interpretation of ORS 165.540 is incorrect, I have no reason to disagree with the majority's conclusion that a deputy district attorney is

---

[5] We share the concerns expressed in the concurrence regarding the circumstances that gave rise to the underlying criminal charges in this case. Unfortunately, given the posture of the case before us, any manner of addressing them would be outside the scope of our review.

not a "law enforcement officer" under that statute and that defendant was therefore not entitled to the jury instructions she requested. In fact, I agree with that conclusion.

But despite my agreement with the majority's conclusion and its path in reaching it, I write separately to acknowledge that some might consider this a less-than-entirely-just result. In this case, defendant is a parent whose children were taken into the care of the juvenile court and the Department of Human Services (DHS). For reasons that are not readily apparent, DHS, the district attorney's office, and others met with defendant regarding her dependency case while the matter was ongoing, but defendant was not represented by counsel at that time. Evidently recognizing that she could be outmatched by the various attorneys and other professionals at those meetings should things become at all adversarial, defendant sought to memorialize them in a way that would be accurate and reviewable by someone acting on her behalf at a later time, whether her future attorney, the state bar, or some other authority.

It appears to be undisputed that, before recording the meetings with her cell phone, defendant conducted her own research—with help from her husband, who also attended the meetings—as to whether it would be lawful to do so without informing the other participants. Defendant understood that her right to record the meetings depended on whether a deputy district attorney met the definition of "law enforcement officer" so as to satisfy the exception under ORS 165.540(5)(b). Defendant testified that, in the course of researching that issue, she found "dozens and dozens of references" to support her understanding that deputy district attorneys did meet that definition, and she explained her view that they engaged in law enforcement through their role in "prosecuting crimes and arresting people, * * * lead[ing] the investigations done[, and having] * * * police officers work under [them] in that capacity."[1] Ultimately, defendant was able to consult with an attorney or two, who

[1] At trial, the prosecutor repeatedly objected when defendant sought to explain her research and why she reached the conclusion that she had, and her own attorney opted to move on without pressing the issue. In her brief on appeal, however, defendant cites resources such as Wikipedia and the website of the ACLU of Oregon in support of her view that the district attorneys are commonly

confirmed her understanding that, because a deputy district attorney would be attending the meetings, defendant could lawfully record the meetings without notice to those attending.

Unfortunately for defendant, as the majority opinion ultimately concludes, she got it wrong. So did her husband. So did the attorneys who were willing to offer her some advice even though they apparently did not formally represent her. And, finally, so did defendant's appellant counsel, who herself capably researched and argued the issue, applying the appropriate legal framework and utilizing all of the resources and research tools available to members of her profession. All of those people got it wrong because, as the majority's expansive analysis ultimately reveals, the legislature seems to have intended something different than they all believed.

Two aspects of the majority's analysis are particularly noteworthy. One, as the majority opinion notes, even "[t]he state concedes that the plain meaning of the relevant terms could plausibly encompass a district attorney[.]" 320 Or App at 194. I would agree with that concession. Two, the majority's contrary conclusion—which results from a scholarly examination of the text, context, and legislative history of the disputed statutory language and the application of a canon of construction or two—ultimately rejects defendant's plausible understanding of the statute. Indeed, before providing its final answer to defendant's statutory question, the majority dives deeply—and appropriately—into the text of ORS 165.540, the text of the statute it incorporates (ORS 133.726), the immediate and larger statutory context of both, and the extensive legislative history leading to their passage.

That, of course, is what we as appellate judges do. And it is what we must do, as it is the legislature that makes the laws, and the courts that, when necessary, explain what the legislature must have meant when it enacted those laws—the *PGE*/*Gaines* framework is simply our methodology for answering that question. But that is not how real

---

understood to engage in law enforcement. Presumably, her own research resorted to similar, commonly accessed resources.

people answer such questions. Most real people, like defendant in this case—particularly when they have little or no access to professional legal assistance—resort to publicly available resources like Wikipedia and other internet sites that, despite offering a wealth of misinformation, sometimes produce answers to tough legal questions that are at least admittedly "plausibl[e]." True, all of the statutes, reference materials, and legislative history that the majority opinion relies upon are likewise publicly available; indeed, it is the fact that at least the codified laws are publicly available that allows for the notion that all persons are "presumed to know the law." Here, however, where an individual has made more-than-reasonable efforts to ensure that her conduct stayed within the bounds of the law by carefully consulting the statutes and ancillary resources that were reasonably accessible *to her*, as well as by seeking the advice of others (including that of two attorneys), it would not be surprising if some perceive the legally correct result that the majority reaches—employing all of *its* legal expertise and resources—as somewhat less than just.[2]

The end result is that, despite defendant's considerable efforts to stay within the law, she finds herself convicted for having violated a statute whose meaning was subject to reasonable dispute until the majority, with its considerable expertise and legal resources, settled that dispute. Again, I wholly agree with the majority's conclusion. But because I recognize that some may well perceive that result as surprising, I respectfully concur.

---

[2] Defendant has not contended that the statute under which she was prosecuted was so vague or otherwise unclear as to deprive her of due process, and I express no opinion as to whether such a challenge might have merit here.