No. 269          April 2, 2025          299

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES JOE SELLS,
aka James Joseph Sells,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR06381; A180301

Christopher A. Ramras, Judge.

Argued and submitted February 25, 2025.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for one count of reckless driving, ORS 811.140. He raises three assignments of error.

In his first assignment of error, defendant contends that the trial court "erred when it failed to exclude *** a video of defendant" that was recorded by a law enforcement officer. As defendant sees it, the video should have been excluded from evidence under ORS 165.540(1)(e), which prohibits the "use" of any "conversation" obtained "by means of any device *** if not all participants in the conversation are specifically informed that their conversation is being obtained." Specifically, defendant argues that the trial court erred in determining that the video was made "openly and in plain view" and was therefore admissible under ORS 165.540(5)(b). We agree with defendant that the trial court erred in admitting the video, because the record does not support a determination that it was made "openly and in plain view," and we further conclude that the admission of the video was not harmless.[1]

In his second assignment of error, defendant contends that the trial court erred when it ruled that an officer could provide expert testimony that defendant was driving at a "high rate of speed." Specifically, defendant contends that the trial court erred when it ruled that the officer was qualified to provide that testimony under OEC 702; erred when it failed to conduct OEC 403 balancing; and erred because, if it did "implicitly" conduct OEC 403 balancing, it abused its discretion in determining the officer's testimony was admissible. Because it will likely arise on remand, we briefly address the first aspect of defendant's second assignment of error—whether the officer was qualified to provide the expert testimony that he did—and we conclude that the trial court did not err when it determined that the officer

---

[1] Our conclusion that the trial court erred is with regard to the trial court admitting the video with the accompanying audio of the "conversation" defendant had with the officer. *See* ORS 165.540(1)(c) (prohibiting "obtain[ing] or attempt[ing] to obtain the whole or any part of a *conversation* *** if not all participants in the conversation are specifically informed that their conversation is being obtained." (Emphasis added.)). We express on opinion on whether the video would be admissible without the audio.

was so qualified under OEC 702. We do not, however, address defendant's OEC 403 arguments because, on remand, if the state again seeks to have the officer provide expert testimony that defendant was driving at a "high rate of speed," the trial court will have the opportunity to exercise discretion under OEC 403 on the record before it at that time. *See State v. Estrada-Robles*, 312 Or App 357, 358, 492 P3d 731 (2021) (declining to address issue where the issue may "arise anew on retrial" but the record "may well develop differently on remand").

In his third assignment of error, defendant argues that the trial court erred "when it denied defendant the right to a jury trial on restitution." Because we are reversing and remanding defendant's conviction, we need not, and do not, address defendant's third assignment of error. *See State v. Barajas*, 247 Or App 247, 249, 268 P3d 732 (2011) ("Because we conclude that the trial court erred by denying defendant's right to present a closing argument, we reverse and remand. That disposition obviates the need to address defendant's assignment of error concerning her sentence.").

## I.  DEFENDANT'S FIRST ASSIGNMENT OF ERROR

We begin with our standard of review and an overview of the statutory background in which defendant's first assignment of error arises. As our discussion of that statutory background will make clear, we think it unlikely that the legislature intended the exception in ORS 165.540(5)(b) on which the trial court relied to admit the video to apply in circumstances such as those in this case, where a recording is made *by* a law enforcement officer *of* a member of the public. But, given the arguments in the trial court and on appeal, we ultimately conclude that defendant's argument on appeal—that the trial court erred in determining that the video was made "openly and in plain view"—is well-taken, and that the error was not harmless.

### A.  *Standard of Review*

Defendant challenges the trial court's conclusion that the video was admissible notwithstanding ORS 165.540(1)(e). We review that evidentiary ruling for legal error. *State v. Evensen*, 298 Or App 294, 296, 447 P3d 23,

*rev den*, 366 Or 64 (2019). In doing so, the "trial court's findings of fact are binding on appeal if there is evidence in the record to support them." *State v. Nefstad*, 301 Or App 185, 192, 456 P3d 294 (2019), *rev den*, 366 Or 451 (2020).

Further, in determining whether the trial court erred with regard to an evidentiary ruling, "[o]ur review of a trial court's ruling is limited to the record as it had developed at the time of the ruling." *State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019); *see also id.* (noting that we do not evaluate "a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial"). That stands in contrast to our consideration of the record when determining whether an evidentiary error was harmless. When considering whether an evidentiary error was harmless, "the court must consider the entire record." *State v. Becker*, 211 Or App 1, 8, 153 P3d 158, *rev den*, 343 Or 223 (2007).

B.   *Statutory Background*

ORS 165.540, as a general matter, and subject to certain exceptions, "prohibits recording a conversation without the knowledge of all participants, using that recording, and divulging its contents." *State v. Prew*, 213 Or App 336, 339, 161 P3d 323 (2007). And ORS 165.540(1)(e) has been interpreted to require suppression of all "'evidence that was derived, directly or indirectly, from the information obtained in violation" of ORS 165.540. *Id.* (internal quotation marks omitted).

In relevant part, ORS 165.540 provides:

"(1) Except as otherwise provided *** a person may not:

"* * * * *

"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained.

"* * * * *

"(e) Use or attempt to use, or divulge to others, any conversation, telecommunication or radio communication obtained by any means prohibited by this section."

But ORS 165.540 contains certain exceptions to its prohibition on recording conversations if not all participants in the conversation are specifically informed that their conversation is being obtained.

The trial court concluded that the exception set forth in ORS 165.540(5)(b) applied in this case and provided a basis to admit the video at issue, which, as noted, is a video *of* defendant that was recorded *by* a law enforcement officer. The trial court concluded that that exception applied because, among other reasons, the recording was made "openly and in plain view of the participants in the conversation."

ORS 165.540(5) provides, as relevant:

"The prohibitions in subsection (1)(c) of this section do not apply to:

"* * * * *

"(b) A person who records a conversation in which a law enforcement officer is a participant, if:

"(A) The recording is made while the officer is performing official duties;

"(B) The recording is made openly and in plain view of the participants in the conversation;

"(C) The conversation being recorded is audible to the person by normal unaided hearing; and

"(D) The person is in a place where the person lawfully may be[.]"

The exception in ORS 165.540(5)(b) was enacted by the legislature through 2015 House Bill (HB) 2704. Or Laws 2015, ch 553, § 1. As explained in a Staff Measure Summary for HB 2704, the bill created a new exception to the prohibition in ORS 165.540(1)(c) "for citizens who are recording the police." Staff Measure Summary, Senate Committee on Judiciary, HB 2704, June 4, 2015; *see also Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 503, 134

P3d 1065 (2006) (considering a staff measure summary as part of the analysis of the legislative history of a statute).

The issue the exception now codified at ORS 165.540(5)(b) was meant to address was that, prior to passage of HB 2704, it was, in many circumstances, "a crime to record a conversation without 'specifically informing' the parties to the conversation," but "sometimes it is not safe for a person to interrupt an officer to provide warning" that a recording is taking place.[2] Testimony, Senate Committee on Judiciary, HB 2704, June 2, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon). Thus, the exception in ORS 165.540(5)(b) was "viewed as 'essential for protecting the right to record on-duty peace officers in Oregon.'" *State v. Delaurent*, 320 Or App 191, 199, 514 P3d 113, *rev den*, 370 Or 303 (2022) (quoting Exhibit 12, House Committee on Judiciary, HB 2704, Mar 12, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon)).

The June 4, 2015, Staff Measure Summary explained that the exception in HB 2704 would apply to a person "who openly, and in plain view of the participants in the conversation, records a law enforcement officer while the officer is performing his or her official duties in a place where the person recording is lawfully present." Staff Measure Summary, Senate Committee on Judiciary, HB 2704, June 4, 2015. As introduced, HB 2704 did not include the requirement that the recording be made "openly and in plain view." That language was added to the bill after concerns were raised about "surreptitious" recording of officers "for example, at lunch time."[3] *See, e.g.*, Video Recording, House Committee

---

[2] For example, it may not be safe to provide a "warning" when "an officer is engaged in a dangerous situation and may be distracted by the warning" or when "an officer is actively engaged in misconduct, and warning the officer may provoke additional misconduct directed at the person recording." Testimony, Senate Committee on Judiciary, HB 2704, June 2, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon). In addition, "[m]any officers would *** prefer that people quietly stand by while recording, rather than having to listen to warning upon warning in the middle of what may already be a tense situation." *Id*.

[3] An additional concern voiced to the legislature when it was considering passing HB 2704 was that, "because it is common knowledge that the public has a right to record on-duty police, people all over Oregon are unintentionally violating Oregon's eavesdropping statute when they openly record without a warning."

on Judiciary, HB 2704, Apr 20, 2015, at 26:20 (statement of Rep Jeff Barker), https://olis.oregonlegislature.gov (accessed March 25, 2025).

In considering the final amendments to HB 2704 before enactment, and how the statute would operate with those amendments, the legislature was informed that the term "openly" "commonly means without concealment, deception, or prevarication, especially where these might be expected." Testimony, Senate Committee on Judiciary, HB 2704, June 2, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon)). The legislature was also informed that the term "plain view" has "an established meaning in criminal law as being something that is plainly observable to the officer." *Id.*; *see also* Video Recording, Senate Committee on Judiciary, HB 2704, June 2, 2015, at 18:30 (statement of Rep Lou Frederick, chief sponsor of HB 2704), https://olis.oregonlegislature.gov (accessed March 25, 2025) (noting that McCullough's June 2 statement provided an "excellent written explanation" of the bill). That is, "openly and in plain view" means that if the "officer actually did look at [the person recording], they would see that they were recording." Video Recording, Senate Committee on Judiciary, HB 2704, June 2, 2015, at 18:30 (comments of Kimberly McCullough), https://olis.oregonlegislature.gov (accessed March 25, 2025); *see also id.* at 34:45 (comments of Kevin Campbell, Oregon Association of Chiefs of Police) (testifying in support of HB 2704, noting that it "creates the right kind of balance and draws the proper line to avoid surreptitious recording where an officer does not know and does not have an expectation they are being recorded").

Given that legislative history, we reach the observation we made at the outset of our discussion of defendant's first assignment of error: It seems unlikely to us that the

---

Testimony, Senate Committee on Judiciary, HB 2704, June 2, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon)). In that regard we note that, during a hearing on HB 2704, the ACLU of Oregon took the position that "the First Amendment protects certain surreptitious recordings of on-duty police," although the "bill does not address such recordings, which will remain criminal under Oregon law, [even after passage of] HB 2704." *Id.*

The legality of the surreptitious recording of law enforcement officers while they are on duty is beyond the scope of this opinion, and we express no opinion on it.

legislature intended ORS 165.540(5)(b) to apply to recordings such as the one in this case, which is a recording made *by* a law enforcement officer *of* a member of the public. As set forth above, the issue HB 2704 aimed to address was the recording *of* law enforcement officers *by* members of the public when the member of the public, for whatever reason does not "specifically inform" the officer of the recording.[4]

But, given the arguments in the trial court and on appeal, we put that legal issue aside. That is because, even assuming that the exception in ORS 165.540(5)(b) could apply to recordings made by law enforcement officers, such as the one in this case, we conclude that the trial court erred in applying the exception here: As explained below, the trial court's determination that the recording made by the officer in this case was made "openly and in plain view" is not supported by the record.

Finally, before turning the factual background of this case, we note another statute that the trial court concluded provided a basis to admit the video, ORS 136.432. That statute provides:

---

[4] In making that observation concerning legislative intent, we note that ORS 165.540(5) contains other exceptions to the prohibition on recordings without notice set forth in ORS 165.540(1)(c), that are applicable to recordings made *by* law enforcement officers. ORS 165.540(5) provides, in pertinent part:

"The prohibitions in subsection (1)(c) of this section do not apply to:

"* * * * *

"(d) A law enforcement officer who is in uniform and displaying a badge and who is operating:

"(A) A vehicle-mounted video camera that records the scene in front of, within or surrounding a police vehicle, unless the officer has reasonable opportunity to inform participants in the conversation that the conversation is being obtained; or

"(B) A video camera worn upon the officer's person that records the officer's interactions with members of the public while the officer is on duty, unless:

"(i) The officer has an opportunity to announce at the beginning of the interaction that the conversation is being obtained; and

"(ii) The announcement can be accomplished without causing jeopardy to the officer or any other person and without unreasonably impairing a criminal investigation; or

"(e) A law enforcement officer who, acting in the officer's official capacity, deploys an Electro-Muscular Disruption Technology device that contains a built-in monitoring system capable of recording audio or video, for the duration of that deployment."

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)   The United States Constitution or the Oregon Constitution;

"(2)   The rules of evidence governing privileges and the admission of hearsay; or

"(3)   The rights of the press."

As explained below, like the trial court's reliance on ORS 165.540(5)(b) to admit the video, the trial court's reliance on ORS 136.432 to admit the video also was error.

B.   *Factual Background*

With that statutory background in mind, we turn to the historical facts and procedural history necessary to resolution of defendant's first assignment of error.

1.   *Defendant's Conduct and Police Response*

Defendant was driving while he was intoxicated and hit a telephone pole resulting in injury to himself, as well as significant damage to his vehicle and the telephone pole. He returned home on foot, and his fiancée called 9-1-1. Both police and paramedics responded to the 9-1-1 call and went to defendant's residence.

The officer who arrived at defendant's residence recorded a video of his conversation with defendant. In addition to defendant's conversation with the officer, the video includes defendant's interactions with paramedics, an emergency room doctor (via telephone), and other police officers. On the video, defendant tells the officer who was recording it that he had hit the telephone pole because, on his way home from a McDonald's restaurant, an oncoming vehicle swerved into his lane, which caused him to crash his truck. On the video, defendant also tells the officer that he had "a couple beers *** three to four hours ago."

An ambulance ultimately transported defendant to the hospital, his blood was drawn, and testing of two blood

samples revealed blood alcohol concentrations of .211 and .273.

For his conduct, defendant was charged with one count of driving under the influence of intoxicants (DUII), ORS 813.010, and one count of reckless driving, ORS 811.140.[5] Defendant pleaded guilty to the DUII charge and entered diversion, but he went to trial on the reckless driving charge.

2.   *Defendant's Motion to Exclude the Video*

During defendant's trial, defendant argued that the video the officer took of him was inadmissible under ORS 165.540, which, as a noted above, as a general matter, "prohibits recording a conversation without the knowledge of all participants, using that recording, and divulging its contents." *Prew*, 213 Or App at 339.

The trial court ruled that, although it was "not clear whether or not the officer informed [defendant] of the recording," ORS 165.540(1)(e) did not require suppression of the video for two independent reasons.

First, the trial court determined that the video satisfied ORS 165.540(5)(b), which, as noted, provides an exception to ORS 165.540 when certain criteria are satisfied, including that the recording was made "openly and in plain view." In reaching that determination, the trial court stated that "the only thing it had some question about is whether or not the recording was made openly and in plain view of

_____

[5] ORS 813.010 provides, in relevant part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of an intoxicant or a combination of intoxicants[.]"

ORS 811.140 provides, in relevant part,

"(1) A person commits the offense of reckless driving if the person:

"(a) Recklessly drives a vehicle upon a highway or premises open to the public in a manner that endangers the safety of persons or property[.]"

We note that both ORS 813.010 and ORS 811.140 were amended after the conduct that gave rise to the charges in this case. *See* Or Laws 2023, ch 158, § 2; Or Laws 2023, ch 498, § 3. However, we refer to the current version of those statutes in this opinion, because those amendments do not affect our analysis.

[defendant]," but it was drawing that inference "just given what [it saw] on the camera." The trial court then stated that it had "nothing before [it] regarding what kind of camera was used, where it was positioned on the officer, or how visible it may or may not have been," so it was "possible that that particular section of (5)(b) is not met." In other words, we understand the trial court to have determined that the recording was made "openly and in plain view" based on only the content of the video, which does not provide information regarding what kind of camera was used, where the camera was positioned, or how visible it was.

And second, the trial court determined that, in any event, ORS 136.432 barred exclusion of the video even if the video was made in violation of ORS 165.540(c).

### 3. *Defendant's Trial*

During defendant's trial, defendant's theory—consistent with his statement to police on the video—was that he swerved to avoid hitting another vehicle. He acknowledged that he "had drinks that evening" but argued that "[d]rinking and driving, even over the legal limit, without more is * * * not proof of reckless driving in and of itself," and that that is true "even if defendant crashed." That is, defendant's theory, as we understand it, is that there was no evidence that the manner in which defendant drove his vehicle was reckless.

The state, for its part, took the position that defendant was heavily intoxicated and was speeding at the time of the crash. The state called two officers who testified as to defendant's apparent intoxication, including the officer who recorded the video. Moreover, and as particularly relevant to defendant's first assignment of error, the state, having secured admission of the video, highlighted the video's contents to help prove how alcohol consumption had impaired defendant: During its direct examination of one of the officers, the state played the video and paused it twice to have the officer describe what was transpiring on the video, including when an officer was "steadying defendant," because the officer was concerned about defendant, who was visibly wobbling in the video, falling over.

Moreover, during the state's closing argument, in urging the jury to reach a guilty verdict, the state argued to the jury that, in considering the charge of reckless driving, "it wasn't just" that defendant "was really over the legal limit" or that "there was drinking," but also "perceptions" and "observations that [alcohol] had affected [defendant]." In making that argument—about "perceptions" and "observations" of defendant—the state highlighted the contents of the video, noting that the video showed that defendant "had trouble keeping his eyes open" and showed officers "putting hands up" to "keep [defendant] from falling."

C.  *Analysis*

1.  *ORS 136.432 did not provide a basis to admit the video.*

As an initial matter, defendant argues, and the state agrees, that the trial court's reliance on ORS 136.432 as a basis to admit the video was error. As noted above, that statute provides that a court "may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision" unless exclusion of the evidence is required by the Constitution, the "rules of evidence governing privileges and the admission of hearsay," or "the rights of the press." We have previously concluded that the "suppression remedy" in ORS 165.540(1)(e) "survive[d]" enactment of ORS 136.432, because "ORS 136.432 did not repeal existing exclusionary statutes," such as ORS 165.540(1)(e). *Prew*, 213 Or App at 339-40.

Thus, we agree with the parties that the trial court's reliance on ORS 136.432 as a basis to admit the video was error.

2.  *ORS 165.540(5)(b) did not provide a basis to admit the video.*

Defendant contends that the trial court erred when it relied on ORS 165.540(5)(b) as a basis to admit the video, because "the record does not permit a nonspeculative inference that *** the recording was made openly and in plain view." In doing so, defendant highlights that the state

proffered the video as admissible "without any explanatory testimony," and contends that "nothing about defendant's behavior [on the video] indicates that he knew he was being recorded."

The state responds that, based on the video itself, the trial court could infer that the video was made "openly and in plain view." The state notes that, in the video, defendant "sits on the ground and [the officer] kneels at defendant's level and converses with defendant face to face," the area "is well lit," and "no clothing or any other objects obstructs the line of sight between the camera lens and defendant." Based on those facts, the state contends that the trial court could infer the video was made "openly and in plain view."

We agree with defendant. Although we have not previously interpreted the phrase "openly and in plain view" in ORS 165.540(5)(b)(B), and we need not consider the outer-boundaries of that phrase as used in ORS 165.540(5)(b)(B) in this opinion, employing our usual method of statutory construction to determine the rule of law the legislature intended, we conclude that the legislature intended the exception to apply only when, at a minimum, the recording device was both not concealed and its nature or purpose would be apparent to someone observing it.

That is because, from the legislative history discussed above, we understand the legislature to have intended "openly" to have its ordinary meaning, *i.e.*, "without concealment," and "in plain view" to have its "established meaning in criminal law," *i.e.*, "something that is plainly observable to the officer." Testimony, Senate Committee on Judiciary, HB 2704, June 2, 2015 (statement of Kimberly McCullough, Legislative Director of the ACLU of Oregon); *see Webster's Third New Int'l Dictionary* 1580 (unabridged ed 2002) ("openly" means "in an open manner : freely and without concealment"); *see also State v. James*, 336 Or App 55, 66, 560 P3d 747 (2024) ("The plain-view exception [to the warrant requirement] authorizes seizure of evidence under circumstances where the police are in a place where they are entitled to be when they observe the evidence in plain view and the incriminating character of the evidence is immediately apparent").

Applying the rule articulated above, we conclude that the trial court erred when it determined that the recording in this case was made "openly and in plain view." As the trial court noted, when it made that determination, it had "nothing before [it] regarding what kind of camera was used, where [the camera] was positioned on the officer, or how visible [the camera] may or may not have been." Absent having at least some of that information before it, we conclude the trial court erred when it determined that the recording was made "openly and in plain view."

## C.   *The error was not harmless.*

Having concluded that the trial court erred in admitting the video of defendant, we next consider whether the error was harmless. *See State v. Ramirez*, 310 Or App 62, 63, 483 P3d 1232 (2021) ("Evidentiary error is not presumed to be harmful, and we will affirm a defendant's conviction if there is little likelihood that the particular error affected the verdict.").

Defendant contends that the error was not harmless, because defendant's impairment "was a central part of the state's argument." And defendant asserts that "the recording was qualitatively different and stronger than other evidence presented," insofar as it provided "far more visceral evidence regarding defendant's level of intoxication—and resulting impairment—shortly after he drove, which was less subject to attack than the officers' opinions about defendant's condition."

The state responds that two officers testified they believed defendant was intoxicated, given his speech, physical demeanor, and unsteadiness, so the video was "essentially cumulative evidence on that point"; that the "most damning evidence of defendant's intoxication was the hospital BAC results"; and that there was evidence in the record that defendant was driving at a "high rate of speed" when he crashed, which provided a basis to determine that defendant drove recklessly.

In assessing harmlessness, our function is "constitutionally limited to determining whether, given the nature of the erroneously admitted evidence and its relationship,

*as framed by the parties' presentations*, to the matters essential to the jury's verdict, there was 'little likelihood' that that evidence affected the verdict." *State v. Perkins*, 221 Or App 136, 145, 188 P3d 482 (2008) (emphasis added). In performing that function, we must not "engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). That is, the correct inquiry is not "whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id*.

Given that standard, we cannot say that there is "little likelihood" that the erroneously admitted video affected the verdict. The state encouraged the jury to rely on the video in making its own determination about the extent to which defendant's alcohol consumption had impaired him on the night of his conduct. Specifically, during its closing argument, the state urged the jury that "it wasn't just that defendant was really over the legal limit" or that "there was drinking," but that the jury could rely on "perceptions" and "observations that [alcohol] had affected him," highlighting, in particular, that the video showed that defendant "had trouble keeping his eyes open" and that showed officers "putting hands up" to "keep [defendant] from falling."

Moreover, as the only the video evidence in the case, the video was "qualitatively different" from the other evidence at trial, and likely would have "particularly drawn the attention of the jury" for that reason. *See State v. Alvarado*, 312 Or App 177, 192, 492 P3d 712 (2021) (erroneously admitted video evidence not harmless where it was "qualitatively different than the other evidence at trial," "likely particularly would have drawn the attention of the jury," and state relied on video during closing argument).

In light of the contents of this specific video, including defendant's conduct and demeanor reflected in the video, we think it could have had a "potential visceral" impact on the jury. *See Perkins*, 221 Or App at 145 (determining erroneous admission of evidence not harmless, and noting the "potential visceral impact of such evidence on jurors"). Put more succinctly, "if a picture is worth 1,000 words, query

how much [a] video is worth." *Crane v. City of Arlington*, 60 F4th 976, 979 (5th Cir 2023) (Oldham, J., dissenting).

To be sure, as the state notes, there is other evidence in the record that defendant was intoxicated, including defendant's BAC, and the state also highlighted that evidence during its closing argument. But given our function in assessing whether error is harmless, "we decline the state's implicit invitation to assess the persuasiveness of its other evidence pertaining to the degree of defendant's impairment." *Perkins*, 221 Or App at 145; *see also State v. Rodriguez-Delao*, 335 Or App 700, 709-10, 560 P3d 85 (2024) (notwithstanding evidence that defendant had "a blood alcohol content of 0.12 percent," erroneous admission of results of a horizontal gaze nystagmus test in a DUII trial was not harmless); *State v. Redman*, 338 Or App 384, 395-96, ___ P3d ___ (2025) (erroneous admission of "testimony about numerical cut-offs and defendant's score on the walk-and-turn and the one-leg-stand tests" in DUII trial was not harmless, although the existence of other "considerable evidence of impairment from intoxicants" militated against exercising our discretion to correct plain error).

Additionally, in arguing that any error was harmless, the state argues that during defendant's trial, but *after* the trial court had made its evidentiary ruling admitting the video, the officer who recorded the video testified that he "told defendant that he was going to record the conversation." Based on that testimony from the officer, the state posits that any error in admitting the video is harmless, because the video "was created in conformance with ORS 165.540(1)(c) and was admissible at trial," insofar as defendant was "specifically informed" it was being created. We thus understand the state to argue that the evidentiary error in admitting the video was harmless because, in hindsight, admitting the video was no error at all.

There are two difficulties with the state's argument. First, the state does not articulate how, given our standard of review, we are to assess the credibility of the officer's testimony that he told defendant that he "was going to record the conversation." The trial court's only finding as to whether the officer told defendant he was going to record the conversation

came when the trial court ruled on the video's admissibility, and it found that it was "not clear whether or not the officer informed [defendant] of the recording." *Sperou*, 365 Or at 137 ("[O]ur review of a trial court's ruling is limited to the record as it had developed at the time of the ruling[.]"). The state points to nowhere in the record where the trial court expressly or implicitly credited the testimony to which the state now points in support of its harmlessness argument.

Second, and just as fundamentally, the state's argument regarding harmlessness is inconsistent with the test we apply in assessing whether error was harmless: The question is whether there is little likelihood that the erroneous admission of the video affected the verdict, *see Davis*, 336 Or at 32 ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?"), it is not whether the erroneous admissions was actually an error when evaluated with the benefit of hindsight, *see Sperou*, 365 Or at 137 (we do not evaluate "a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial").

We thus conclude that the trial court's error in admitting the video was not harmless.

D.  *Conclusion regarding defendant's first assignment of error.*

In sum, we conclude that, assuming without deciding that ORS 165.540(5)(b) can provide a basis to admit conversations obtained *by* officers notwithstanding ORS 165.540(1)(e), the trial court erred when it determined that that exception applied in this case. We also conclude that the erroneous admission of the video was not harmless. We thus reverse and remand.

II.  DEFENDANT'S SECOND ASSIGNMENT OF ERROR

During defendant's trial, the trial court ruled that an officer was qualified under OEC 702 to provide expert testimony that the defendant's vehicle hit the telephone pole at a "high rate of speed."

As noted, in defendant's second assignment of error, defendant contends that the trial court erred when it ruled that the officer was qualified under OEC 702 to provide that testimony, and we address that issue, because it will likely arise on remand.[6]

We "review for legal error whether a trial court properly applied OEC 702 in deciding whether an expert is qualified to testify." *Mall v. Horton*, 292 Or App 319, 323, 423 P3d 730, *rev den*, 363 Or 744 (2018). "Whether a witness is qualified to testify as an expert is relative to the topic about which the witness is asked to testify." *State v. Wagner*, 319 Or App 399, 405, 509 Pd 731, *adh'd to as modified on recons*, 321 Or App 79, 515 P3d 402 (2022), *rev den*, 370 Or 714 (2023). Importantly, "a witness does not need to have a particular education or degree to qualify as an expert." *Id.* "Rather, a witness testifying as an expert needs to have the necessary skill and knowledge to arrive at an intelligent conclusion about the subject matter in dispute." *Id.* (internal quotation marks omitted). Ultimately, OEC 702 sets "forth a liberal standard for qualifying expert witnesses." *Mall*, 292 Or App at 324.

In this case, the officer who provided expert testimony that defendant had been driving at a "high rate of speed" previously worked in the traffic division at the Portland Police Bureau and had "dealt with" "hundreds" of traffic accidents. For the eight years prior to providing the expert testimony, he had been on the Portland Police Bureau's "major crash team" where he had "dealt with" between 75 or 100 accidents that involved "high speeds." Given his experience, he was able to "distinguish the speed of vehicles [involved in crashes] based on the damage to the vehicle, to objects, [and] things like that," and based on "intrusion" into the vehicle. Based on his training and experience, he believed the crash in this case occurred at a "high

---

[6] Defendant argues on appeal that the officer was not qualified to provide expert testimony under OEC 702 that defendant was driving at a "high rate of speed" at the time of the crash. Defendant does not argue on appeal that the officers' expert testimony on that point would not have been helpful to the jury; thus, we do not address that issue. *Cf. Johnson v. Monsanto Co.*, 333 Or App 678, 688, 554 P3d 290, *rev den,* 373 Or 154 (2024) (to be helpful, "expert testimony must assist a trier of fact to understand the evidence or determine an issue of fact that it may not be able to understand or determine as well on its own").

speed" due to the fact that defendant's car had "sheared through one pole," debris were scattered "over a hundred feet plus," the "right front axle and wheel were torn off," and due to the amount of "intrusion into the right side of the vehicle."

Given the officer's experience, we conclude that the trial court did not err in determining that the officer was qualified to provide expert testimony that defendant was driving at a "high rate of speed" at the time of the crash.

In seeking a different result, defendant notes that the officer "did not testify about how he considered" factors such as the "weight of the vehicle, the angle and trajectory of the collision, and the nature of the item struck," and did not testify that he had any experiences with crashes involving the type of vehicle at issue—an "F-150 style truck"—colliding with "telephone poles or other stationary wooden objects." But given the officer's experience with highspeed traffic accidents, we think those are matters that properly go to the weight of his testimony, not his qualification to testify. *State v. Rogers*, 330 Or 282, 315, 4 P3d 1261 (2000) ("Whether he is the best expert witness on the specific subject or what credibility will be given to the witness's testimony are matters that go to the weight of his testimony and not to his qualification." (Internal quotation marks omitted.)).

As noted, the parties disagree about whether the trial court engaged in an analysis under OEC 403 of whether the "probative value is substantially outweighed by the danger of unfair prejudice." Should the issue arise on remand, the trial court will have the opportunity to exercise discretion under OEC 403 on the record before it at that time.

Reversed and remanded.